THE STATE OF OHIO, APPELLEE, *v.* SIMMS, APPELLANT.

(No. 82AP-254—Decided May 5, 1983.)

*Mr. Michael Miller,* prosecuting attorney, and *Mr. Alan C. Travis,* for appellee.

*Mr. Gerald G. Simmons,* for appellant.

McCORMAC, J. Kathy M. Simms, defendant-appellant, has appealed her conviction by a jury of aggravated robbery asserting the following assignments of error:

1. "It was error to the prejudice of Appellant for the trial Court to permit an accomplice to testify over Appellant's objection that the State and said accomplice entered into an illegal plea bargain in order to produce such testimony."

2. "The trial Court's refusal to permit a defense expert witness to testify concerning the illegality of an accomplice's plea bargain and thus demonstrate to the jury that her testimony was fatally tainted was a denial of due process of law."

3. "The trial Court erred in refusing the written instruction requested by the defense on the twin issues of corroboration of accomplice testimony and viewing accomplice testimony with great caution."

4. "The trial Court erred in failing to rule on whether an attorney-client privilege had been waived by the client, thereby prejudicially depriving Appellant of an important witness."

There was no dispute but that the victim was shot and killed during the course of a robbery and that defendant, Kathy M. Simms, together with another woman and three men, was present at that time. The other woman, Charlotte Lane, entered into a plea bargaining agreement with the state, part of which required that she testify against defendant. Lane testified that defendant and she had met the victim in a bar and that, after the bar closed, defendant was taking the victim back to her apartment to commit an act of prostitution. The three men involved in the robbery and killing were present at the apartment. Lane said that defendant told the others that the victim had a lot of money and that she had set him up to be robbed. The conspiracy to commit the robbery, according to Lane, did not include a plan that the victim would be killed, at least on her part or on the part of defendant. Lane said that the plan was for defendant and her to accompany the victim to an after-hours bar and, in the process of walking towards the bar, the three

men would steal the victim's money. Lane admitted that she had been permitted to plead guilty to involuntary manslaughter and attempted aggravated robbery with a prison sentence of six months, with three years probation. Defense counsel was permitted to cross-examine her about her knowledge of the possible sentences that might be imposed for the charges initially made against her. Defense counsel was not permitted to cross-examine Lane as to the legality of her sentence, or to present expert testimony that the sentence of Lane was not legal under Ohio law.

In summary, Lane fully implicated defendant in the planning of the robbery, during which the murder resulted.

The second witness who fully implicated defendant in the robbery was John Harvey Williams, who was permitted to plead guilty to obstructing justice and who was not indicted on the robbery or murder charges. He testified that defendant and Lane were to bring the victim towards the after-hours bar in the area where he was ultimately shot and killed, and that they did so. A man named Munnerlyn, who was known to carry a gun and who was a drug user, fired the shots that killed the victim, and apparently the other people were unaware of his intention to use the firearm. The money was split among the three men after the two women ran. Williams said defendant later met the men and wanted some of the money.

Defendant testified and admitted meeting the victim in the bar and going to her apartment with him and Lane, but she denied that the purpose was for prostitution. She said that her boyfriend, one of the other men at the apartment, wanted to rob the victim but that she said no. She said that she accompanied the victim and Lane to the after-hours establishment unaware that any robbery would take place. According to defendant, when she saw the men and the gun she ran. She denied that she took any part in the plan-

ning or commission of the robbery or entered into a division of the spoils.

It was a question of fact for the jury whether defendant participated in the planning and commission of the robbery. There was ample evidence from which a jury could find that she did so, particularly if the testimony of her alleged accomplices, Lane and Williams, was believed.

The first two assignments of error are combined for discussion as they are interrelated.

Defense counsel wanted to impeach Charlotte Lane by showing that the state permitted her to enter into an illegal plea bargaining agreement, resulting in a much lighter sentence than was proper under the law in order to induce her to testify against defendant and others. The plea bargaining agreement for Lane had been approved by another judge of the court of common pleas and had been entered accordingly. Defense counsel contended that R.C. 2951.02 prohibited probation for Lane because the offense to which she pled guilty was committed with a firearm. Defense counsel further proffered the testimony of a law school professor as an expert witness who offered the opinion that the Lane plea bargaining arrangement was contrary to law because it called for probation for a non-probational offense.

The purpose for inquiry into a plea bargaining arrangement with a witness is to show possible bias on the part of the witness that might affect the witness' credibility. The important consideration is what the witness knew about the benefits of the plea bargain as opposed to standing trial on the original charge that might induce testimony that is untruthful. Arguably a witness who is given a deal that is too good to refuse may fabricate testimony to satisfy the state and to obtain the advantage of a favorable plea bargaining deal. In this respect, the trial court permitted cross-examination as to what the witness knew about the original

charge and the penalties that might be accorded as opposed to the punishment imposed after she pled guilty to the lesser charges. There was no inquiry of the witness of whether she was told that she could not receive probation if convicted of the original charges or that the probation part of the plea bargaining was contrary to law if, in fact, it was. As stated, the important consideration is what the witness knew that might induce the witness to fabricate testimony to take advantage of the plea bargain.

Defense counsel first sought to exclude the testimony of Lane by obtaining a ruling by the trial court that the probation part of Lane's sentence was contrary to law and that the testimony was obtained as a result of an illegal plea bargain, thus making it inadmissible. The trial court properly overruled that motion. What was relevant to defendant's case was whether Lane's testimony was credible and what she knew that might have induced her to testify to lies. There was no evidence that the state induced Lane to lie or entered into any conspiracy with her. Hence, the trial court properly excluded any collateral attack upon the sentence imposed upon Lane by another judge of the court who was required to scrutinize and approve the plea bargain and to sentence defendant before the plea bargain could be fully effectuated.

The trial court also properly excluded expert testimony of whether the offense to which Lane pled guilty was probational under the law of Ohio. Even if relevant, the issue was one of Ohio law to be determined by the trial court, who is an expert in Ohio law, aided by counsel for each side, who are also experts in Ohio law. In any event, this was a matter for the court rather than the jury; the testimony would not assist the jury in its determination. See Evid. R. 403(A) which requires exclusion of even relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. Even if relevant, the proffered evidence falls in this category.

Appellant's first and second assignments of error are overruled.

Appellant next contends that the trial court erred in failing to give a proper written instruction to the jury concerning the testimony of an accomplice.

The trial court instructed the jury as follows, as related to credibility and accomplice testimony:

"Other persons who have admitted participation in the same crimes charged in the indictment testified as witnesses. These are known as accomplices. An accomplice is one who knowingly assists or joins another person in the commission of a crime. Testimony of a witness whom you find to be an accomplice should be carefully examined and considered with caution. It should be considered together with all the other facts and circumstances in the evidence.

"Applying the general rules for the credibility of witnesses, you will determine if their testimony is worthy of belief, whether or not these people were accomplices, and the weight that you give to their testimony are matters you must determine.

"The testimony of a witness whom you find to be an accomplice should be considered the same as any other witness. However, no person shall be found guilty of offenses such as those charged in this case upon the testimony of an accomplice alone, unless the testimony of the accomplice is supported by other credible evidence of the essential elements of the crime."

Appellant primarily complains about the instruction of the trial court that the testimony of a witness whom you find to be an accomplice should be considered the same as any other witness.

The trial court's instruction was correct and adequately covered the law applicable to the testimony of the accomplices. The trial court instructed the jury

generally about how to determine the credibility of witnesses taking into account any bias or motive that they might have that would cause them to distort the truth. He told them that the testimony of an accomplice should be carefully examined and considered with caution with all other facts and circumstances in the evidence. The statement that the testimony of an accomplice should be considered the same as any other witness should not be viewed in isolation but in context of the charge as a whole. *State* v. *Price* (1979), 60 Ohio St. 2d 136 [14 O.O.3d 379].

The trial court first instructed the jury about the general test for evaluating the credibility of any witness, which included the consideration of evidence that might indicate bias or interest on the part of the witness. The court then pointed out, in effect, that accomplices may have a specific motive for not telling the truth and that, therefore, their testimony should be viewed with caution. Finally, he instructed the jury that the testimony of each witness must be considered in relation to any possible motive or bias that may cause them to be truthful or untruthful. In stating that an accomplice witness should be considered the same as any other witness, it was in this context. It was not made nor reasonably understood in the context that accomplice witnesses do not have a motive to lie that is special to them. Accomplice witnesses, like other witnesses, are to be considered with their positive and negative aspects that may reflect upon their credibility. Witnesses who are not accomplices may be friends or relatives, a factor to be taken into account that may influence their credibility. There are all sorts of factors to be taken into account in the evaluation of the credibility of each witness and, in this respect, an accomplice witness is no different.

Appellant relies primarily upon Annotation, Propriety of Specific Jury Instructions as to Credibility of Accomplices (1965), 4 A.L.R. 3d 351, and the cases cited therein, in which the author of the Annotation states, at 353:

"Many trial courts have fallen into the trap of telling the jury that the testimony of an accomplice must be received with great caution, but if it carries conviction, and if the jury is convinced of its truth, 'they may pass upon its credibility like that of any other witness.' This, according to most of the cases, is error. It leads the jury to believe that the credibility of accomplice testimony is to be passed upon like that of any other witness, when in fact such testimony should be considered with great caution."

The cases cited in support of this proposition are primarily from Illinois, and few jurisdictions seem to have followed the author's viewpoint. For a contrary viewpoint, see *United States* v. *Goble* (C.A. 6, 1975), 512 F.2d 458, at 470; *United States* v. *Riddick* (C.A. 8, 1975), 519 F.2d 645.

The instruction concerning accomplice testimony did not constitute a trap or a taking away by the right hand what the left hand had given. The court adequately covered the special motive that accomplice witnesses may have to distort their testimony and advised the jury that their testimony should be carefully examined and used with caution. Counsel for defendant can further explain the reason in final argument.

Appellant's third assignment of error is overruled.

Appellant lastly contends that the trial court erroneously prohibited her from calling the attorney for John Harvey Williams to testify as to what his client told him regarding the events surrounding the crime. Williams' attorney refused to testify because Williams had not waived his attorney-client privilege to him and the attorney stated he would testify only if the trial court ordered him to do so. The trial court refused to order the attorney to testify on the basis that R.C. 2317.02(A) granted a privilege to Williams, which the attorney was not able to

unilaterally waive. The trial court further held that the fact that Williams testified in the trial did not constitute a waiver of his attorney-client relationship.

Williams did not testify in regard to any communications with his counsel. Hence, there was no waiver by virtue of his testimony. See Annotation, 51 A.L.R. 2d 521 (1957), Sections 2 and 4: *Duttenhofer* v. *State* (1877), 34 Ohio St. 91.

Appellant's fourth assignment of error is overruled.

Appellant's assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

WHITESIDE, P.J., and STRAUSBAUGH, J., concur.