THE STATE OF OHIO, APPELLEE, *v.* FERGUSON, APPELLANT.

(No. 50082 — Decided February 18, 1986.)

*John T. Corrigan,* prosecuting attorney, and *John Porter,* for appellee.
*James E. Carson,* for appellant.

PARRINO, C.J. Defendant, Jerome Ferguson, appeals his conviction of at-

tempted grand theft. The facts giving rise to this appeal are as follows.

## I

On September 24, 1984, at approximately 7:00 p.m., Leonides Penas' 1976 Ford Granada broke down at a Sohio gas station on West 14 and Clark Avenue, in Cleveland, Ohio. After obtaining permission, Penas decided to leave his car at the Sohio station until the next day when he could get it repaired.

Later that evening, at approximately 10:30 p.m., store manager Betty Andrews, after having closed the station, noticed three black males in the area of the gas station. Andrews then left with her two cashiers. After driving a short time, Andrews decided to go back to the station to see if the three individuals were still there. As she returned she noticed the three men were still at the station. Andrews then pulled into the Citgo gas station across the street, and had the cashier call the police. Sergeant Bayse of the Cleveland Police Department responded and detained two of the three individuals. One of the individuals detained was the defendant, the other was Maurice Moore. The third individual had fled.

After a short investigation, the third individual, Lorenzo Curry, was discovered. On December 3, 1984, Jerome Ferguson and Lorenzo Curry were indicted on one count of attempted grand theft, and one count of possessing criminal tools.[1]

A trial by jury commenced on February 25, 1985. At trial, the state presented testimony from Leonides Penas who stated that his car had broken down on the evening of September 24, 1984, and that he had left it at the Sohio gas station overnight. The

next day he found that the rear window on the driver's side of his car had been broken, and that the steering column had been damaged.

Betty Andrews and Sergeant Bayse also testified on behalf of the state. Andrews testified that she had seen three individuals at about 10:30 p.m. when she left, and when she returned to see if anything was going on, she saw that three individuals were still around the station. She then directed the cashier across the street to call the police. Before the police arrived, she stated that she saw one of the three individuals in Penas' car. Betty Andrews could not identify the individuals she had seen.

Sergeant Bayse testified that he received a call from a dispatcher at approximately 11:50 p.m. relating to activities at the Sohio gas station at West 14 and Clark. Bayse further stated that as he arrived, an individual he later learned to be Lorenzo Curry fled. Bayse was able to detain Maurice Moore, who was standing by the gas station, and the defendant, who was behind a dumpster located on the Sohio premises.

Bayse then examined the car. He testified that the back window was broken on the driver's side, the steering column was "stripped," and where the radio had been, "it was torn up, but they hadn't gotten the radio out." Bayse also testified that he found a screwdriver near the dumpster. The screwdriver, however, was subsequently lost by the police.

The state's final witness to the events of the evening was Lorenzo Curry. Curry had been granted complete immunity from the aforementioned charges in exchange for his testimony. Curry testified that on the evening in question Ferguson stated that he needed some parts for his car. Ferguson and Moore then took some tools and together with Curry went to the area of West 14 and Clark Avenue.

---

[1] The record in the case at bar does not indicate whether Maurice Moore was also indicted.

Curry stated that the group first came upon a Cadillac. But it had already been "stripped" so they continued to walk. The three then walked to the Sohio gas station in question. Curry further testified that Moore then noticed the 1976 Ford Granada, and that Ferguson said, "Yes, that's the one we should get."[2] According to Curry, he then told the other two men that he did not want to get involved and left. Before leaving, however, Curry stated that he saw the defendant break the rear window on the driver's side. Curry then went for a walk.

According to Curry, after a few minutes he decided to go to his girlfriend's house. On his way there he cut back through the Sohio station. It was at that moment that the police pulled in the station. Despite being told to stop, Curry fled. Curry also testified that as he started to go through the Sohio station he saw Moore in the car "[t]rying to peel the column." On cross-examination the defendant was not permitted to mention the fact that Curry was also indicted, and that he had been granted immunity in exchange for his testimony.

At the conclusion of the state's case, the defendant moved for an acquittal pursuant to Crim. R. 29. The motion was overruled. The defendant then took the stand on his own behalf and testified that on the evening in question he was on his way to his girlfriend's house. As he was cutting through the Sohio station at West 14 and Clark Avenue, he decided to stop and call to make sure she was home. While he was there he saw Maurice Moore and Lorenzo Curry walking by, and the three began to talk. Following their discussion, the defendant went behind the dumpster to urinate. While he was back there, he heard the police car pull up and was ordered out at gunpoint. The defendant maintained that he had nothing to do with Penas' car.

After hearing all the testimony, the jury found the defendant guilty of attempted grand theft. The trial court then sentenced the defendant to six months at the Ohio State Reformatory.

The defendant has filed a timely appeal raising two assignments of error.

## II

First assignment of error:

"Defendant[']s rights were violated when the court instructed the jury that an accomplice's testimony should be considered the same as any other witness'."

Under this assignment appellant argues that the trial court should have instructed the jury, as requested, that they must view an accomplice's testimony with great care. Further, appellant argues that the trial court should have permitted defense counsel to elicit testimony that Lorenzo Curry was a codefendant who had been given immunity in exchange for his testimony in the case at bar. We agree with both contentions.

It is well-settled that an accomplice's testimony must be viewed with caution. The legislature recognized this fact when it enacted R.C. 2923.03(D) which provides:

"No person shall be convicted of complicity under this section solely upon the testimony of an accomplice, unsupported by other evidence."

The Supreme Court of Ohio also recognized this fact in State v. Myers (1978), 53 Ohio St. 2d 74, 75, 7 O.O.3d 150, 151, 372 N.E.2d 356, 357, when it stated in pertinent part:

"* * * In this day of plea bargaining and immunized testimony, * * * it is vitally important that one implicating an accomplice do something more than point a finger. His testimony must be

---

[2] Ferguson's out-of-court statement was permitted over defense counsel's objection. The appellant does not raise that ruling as an issue on appeal.

corroborated by some other fact, circumstance, or testimony which also points to the identity of the one he accuses as a guilty actor. * * *'' (Footnote omitted.)

Finally, the proper jury instructions relating to accomplices was discussed in *State* v. *Simms* (1983), 9 Ohio App. 3d 302, 9 OBR 549, 459 N.E.2d 1316. In *Simms* the court held that the trial court may instruct the jury that the testimony of a witness who is found to be an accomplice may be considered the same as any other witness', but only after adequately instructing the jury on the special motive that an accomplice may have to distort his or her testimony, and after advising the jury that said testimony should be carefully examined and used with caution.[3] *Id.* at paragraph two of the syllabus.

In the instant case the trial court limited its instruction on accomplice testimony to the following:

"Now, further, ladies and gentlemen, an accomplice is one who purposely and knowingly assists and joins another person in the commission of a crime.

"The testimony of a witness whom you find to be an accomplice should be considered together with all other facts and circumstances in evidence and by applying the general rules of credibility of witnesses which I have outlined to you earlier. You will determine if his testimony is worthy of belief and whether or not Mr. Curry was an accomplice and, therefore, the weight that you will give his testimony is a matter for your own determination.

"The testimony of a witness whom you find to be an accomplice should be considered the same as any other witness'. However, no person * * * that is, the defendant, shall be found guilty of criminal charges only upon the testimony of an accomplice.

"The testimony of an accomplice must be supported by other credibile [*sic*] or believable evidence."

As is clear from this instruction, the trial court neglected to charge the jury regarding the accomplice's special motive to distort his or her testimony, and the jury's need to carefully examine and use such testimony with caution. Such instruction is very important. It serves to alert the jurors that accomplices are witnesses with special motives that the average juror may never before have encountered.

The prejudicial effect of this inadequate instruction becomes clear when combined with the trial court's erroneous prohibition of testimony relating to the fact that Curry was a codefendant who had been granted immunity in exchange for his testimony. Such testimony was critical to a determination of Curry's credibility. The trial court's prohibition of this testimony, together with the inadequate instruction, had the effect of factoring out consideration of critical information relating to the credibility of the accomplice's testimony. Such testimony has uniformly been recognized as inherently suspect.

Finally, reviewing the record, we cannot hold that such error was harmless based on the remaining evidence. Curry's testimony was critical to the state's case. The only other witnesses to the crime did not provide sufficient evidence to warrant a conviction. Andrews testified that she saw someone in Penas' car but could not identify the defendant. Sergeant Bayse could only testify that the defendant was

---

[3] The court's holding in *Simms* is consistent with the holdings from other jurisdictions. See, *e.g., United States* v. *Owens* (C.A. 10, 1972), 460 F.2d 268; *United States* v. *Goble* (C.A. 6, 1975), 512 F.2d 458.

behind the dumpster when he pulled into the gas station. He did not see who broke the window, and who was inside the car.

Accordingly, appellant's first assignment of error is sustained.

### III

Second assignment of error:
"The court error [sic] when if [sic] failed to grant defendant's Rule 29 motion for acquittal."

* * *[4]

### IV

Pursuant to our conclusion under appellant's first assignment, the trial court's judgment is reversed and the cause is remanded for a new trial.

*Judgment reversed and cause remanded.*

KRUPANSKY and CORRIGAN, JJ., concur.

---

[4] The text of the opinion as it appears herein was abridged by Chief Justice Parrino.