THE STATE OF OHIO, APPELLANT AND CROSS-APPELLEE, *v.* O'DELL, APPELLEE AND CROSS-APPELLANT.

[Cite as State *v.* O'Dell (1989), 45 Ohio St. 3d 140.]

(No. 88-1223—Submitted May 10, 1989—Decided August 23, 1989.)

*Michael Miller,* prosecuting attorney, and *Bonnie L. Maxton,* for appellant and cross-appellee.

*Steven Mathless,* for appellee and cross-appellant.

WRIGHT, J. The state of Ohio is appealing the reversal of O'Dell's sentence, while O'Dell appeals her conviction and raises four propositions of law. For the reasons that follow, we affirm defendant's conviction but reverse the court of appeals in part and reinstate the trial court's sentence.

I

In the first of four propositions of law, defendant urges that her conviction was obtained in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Defendant alleges that the state failed to disclose a plea agreement between it and Payne whereby the state would recommend a six-month sentence in exchange for Payne's testimony against defendant.

On appeal, defendant filed the transcript of the February 11, 1987 proceeding on David R. Payne's plea, which was considered by the appellate court in its opinion.[1] The plea proceeding is not part of the record in O'Dell's trial, and it was error for the court of appeals to consider it. "A reviewing court cannot add matter to the record before it, which was not part of the trial court's proceedings, and *then decide the appeal on the basis of the new matter.*" (Emphasis added.) *State* v. *Ishmail* (1978), 54 Ohio St. 2d 402, 8 O.O. 3d 405, 377 N.E. 2d 500, paragraph one of the syllabus. See, also, *State, ex rel. The Repository,* v. *Unger* (1986), 28 Ohio St. 3d 418, 419, 28 OBR 472, 473, 504 N.E. 2d 37, 38, fn. 2; *Drakulich* v. *Indus. Comm.* (1940), 137 Ohio St. 82, 17 O.O. 398, 27 N.E. 2d 932; App. R. 9(E).

As the state correctly points out, it was error for the appellate court to consider the transcript in Payne's plea hearing, although the court of appeals did not base its decision upon the transcript. Payne, during his examination in O'Dell's trial, revealed that he had entered a guilty plea to the theft charge, had agreed to testify in this case, had not yet been sentenced and had received no promises from the prosecutor or police regarding sentencing.[2] He did admit that he hoped to receive a six-month sentence. Accord-

---

[1] The transcript of the plea proceedings of Payne was denominated "Transcript of Proceedings Volume II of II." It was filed along with the transcript of defendant O'Dell's trial, which transcript was denominated "Partial Transcript of Proceedings Volume I of II," although this single volume appears to contain a transcription of the entire proceedings. O'Dell's motion to supplement the record with the plea proceeding transcript was denied by the court of appeals as "unnecessary, the record already including Vols. I and II of the transcript of proceedings."

[2] Cross-examination of Payne by O'Dell's attorney elicited the following regarding a plea agreement:

"Q. Now, on this current case that we are talking about, you were charged with one count, two counts of theft, one count of receiving stolen property and one count of possession of criminal tools, is that correct?

"A. Yes.

"Q. And the possible sentence that you could have had if you were convicted of all these charges would have been six and a half years; is that correct?

"A. Yes.

"Q. And this Wednesday you entered

ingly, the jury was fully apprised of Payne's position and could therefore assess his credibility. There was no prosecutorial concealment here that requires a reversal such as that which occurred in the cases of *Giglio* v.

*United States* (1972), 405 U.S. 150, and *Napue* v. *Illinois* (1959), 360 U.S. 264, upon which the defendant relies. Defendant's first proposition of law is therefore denied.

The second and third propositions

---

into an agreement with the prosecution where they would dismiss three of these charges if you agreed to testify against Mandy; is that correct?

"* * *

"Q. Is that correct?
"A. Yes, with my lawyer.
"Q. So rather than facing six and a half years as you originally were charged, if you agreed to testify, you could be sentenced — rather than just if you got convicted of six and a half years — you would only be looking at two years if you were convicted of the charges you pled guilty to?
"A. What do you mean?
"Q. What charge did you plead guilty to?
"A. Theft.
"Q. And if you were convicted of theft, the worst sentence that you would receive is two years; is that correct?
"A. Yes.
"Q. Whereas upon if you were convicted of grand theft, possession of criminal tools and receiving stolen property as you were originally charged, you could have received a sentence of six and a half years; is that correct?
"A. Yes.
"Q. And this grand theft charge that you pled guilty to on Wednesday, you have not been sentenced on that charge; is that correct?
"A. Yes.
"Q. And part of that plea agreement you were told that you would not be sentenced until after you testified; is that correct?
"A. Yes.
"Q. And from that grand theft charge, you can receive a possible sentence of two years, a year, a year and a half or no sentence at all; is that correct?
"* * *

"Q. (By Mr. Mathless) Is that correct?
"A. Yes.

"Q. And isn't it true that you told me that you were told by your attorney if you testified for the state, you would receive a sentence of six months?
"* * *

"Q. Is that correct?
"A. Yes.
"Q. And isn't it also true that you felt if you testified for Mandy, you would receive a sentence of two years; is that correct?
"A. If I what?
"Q. If you testified for Mandy or for the defense, you would receive a sentence for two years?
"A. Yeah."

On redirect, the following exchange took place:

"Q. Okay. What is your understanding of the maximum sentence you could receive for what you have pled guilty to? Is that 18 months?
"A. Something like that.
"Q. At the time you entered your plea, had you talked to me, have you ever talked to me?
"A. No.
"Q. At the time you entered your plea, had you ever talked to any police officer about this? You entered your plea Wednesday morning; is that correct?
"A. Yes.
"Q. Before that time, had you ever talked to any police officer about anything you had done or Mandy had done or David had done?
"A. I talked to a detective yesterday.
"Q. Okay. My question, this is Friday, right? My question was, previous to Wednesday, had you talked to anybody?
"A. No.
"Q. Police officers?
"A. No.
"Q. Yesterday you did talk to a detective; is that right?
"A. Yes."

of law of the defendant challenge the trial court's refusal to give proposed instructions on (1) an accomplice's special motive to distort testimony, and (2) constructive possession.

The court charged the jury that "* * * admitted or claimed complicity of a witness may affect his credibility and may make his testimony subject to grave suspicion and require that it be weighed with great caution." This instruction is dissimilar to that in *State* v. *Ferguson* (1986), 30 Ohio App. 3d 171, 30 OBR 312, 507 N.E. 2d 388, upon which the defendant relies. In *Ferguson,* the trial court failed to instruct that an accomplice's testimony is suspect; rather, it instructed that an accomplice's testimony is to be evaluated as any other testimony. That instruction was held to be prejudicial error. *Id.* at 173-174, 30 OBR at 315-316, 507 N.E. 2d at 390-391. In this case, the trial court's instruction concerning the testimony of an accomplice correctly stated the law and gave the sum and substance of defendant's proposed instruction. That is all that is required. *State* v. *Nelson* (1973), 36 Ohio St. 2d 79, 65 O.O. 2d 222, 303 N.E. 2d 865, paragraph one of syllabus. Defen-

dant's second proposition is without merit.

Defendant also challenges the trial court's failure to give a proposed jury instruction dealing with constructive possession.[3] Twice defendant requested the instruction and twice it was refused. However, defendant's counsel later withdrew the charge and made no objection before the jury was instructed. "The failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise." *State* v. *Underwood* (1983), 3 Ohio St. 3d 12, 3 OBR 360, 444 N.E. 2d 1332, syllabus; Crim. R. 30(A).

Furthermore, during its deliberations the jury asked for clarification of certain terms. The court, with the approval of counsel, gave a supplemental charge on possession.[4] That charge, along with the general charge defining "knowingly" given earlier, provided the sum and substance of the requested jury instruction. Defendant's third proposition of law is overruled.

Defendant's fourth and final proposition of law raises the issue of

---

[3] Defendant's proposed instruction on constructive possession reads:

"The mere fact that property is located within premises under one's control does not in and of itself constitute constructive possession. It must be shown that the person was conscious of the presence of the property. *State* v. *Hankerson* (1982), 70 Ohio St. 2d 87, 97."

[4] The court with counsel's approval gave the following instruction on possession:

"Now let me expand a little bit on possession. Possession is [a] voluntary act if the possessor knowingly procured or received the property or was aware of his or her control. Therefore, for a sufficient

period of time to have ended his possession. A person has possession when he knows that he has the object on or about his person or property or places it where it is accessible to his use or direction, and he has the ability to direct or control its use.

"Two or more persons may have possession if together they have the ability to control it exclusive of others.

"Ownership is not necessary. A person may possess or control property belonging to another.

"Now possess or possession means having control over a thing, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises possible where the thing or substance is found."

whether accomplice testimony needs corroboration to sustain a conviction. In *State* v. *Flonnory* (1972), 31 Ohio St. 2d 124, 60 O.O. 2d 95, 285 N.E. 2d 726, this court held in paragraph three of the syllabus that "[a] conviction may be based upon the uncorroborated testimony of an accomplice, except where otherwise specifically provided by statute."

Subsequent to the *Flonnory* decision, R.C. 2923.03(D) was passed. It provided in part that "[n]o person shall be convicted of complicity under this section solely upon the testimony of an accomplice, unsupported by other evidence." (134 Ohio Laws, Part II, 1961.)

The current version of R.C. 2923. 03(D), effective September 17, 1986 and applicable to the charges in this case, deletes the above language and provides instead a legislatively mandated jury instruction[5] which was given virtually verbatim by the trial judge in this case.

The effect of the statutory change is to leave the assessment of an accomplice's credibility to a jury after it has been properly instructed concerning the treatment of that testimony. There is no longer a statutory requirement of corroboration of an accomplice's testimony in Ohio, and the law on this issue is as it was under *Flonnory, supra.* Under the revised statutes, a trier of fact is not *precluded* from basing a criminal conviction on uncorroborated accomplice testimony.

In any event, that is not the situation herein. As was the situation in *Flonnory,* there *is* corroborating evidence in the record in this case. Defendant was convicted on one count of receiving stolen property, R.C. 2913.51. The elements of that crime require the state to prove that the defendant received, retained or disposed of the property of another, knowing or having reasonable cause to believe that the property was obtained through the commission of a theft. R.C. 2913.51 (A). Four police officers observed defendant accompany Payne to or from the stores in question and shopping with him inside. One officer saw defendant insert her hands into the shipping carton used to smuggle out stolen merchandise. Defendant and Payne then exited the store and Fulford would shortly thereafter enter the store to "purchase" the carton full of stolen items. Later, both shipping cartons which had been initialed by police officers were found in defendant's residence within several hours after their removal from the store. Numerous items in unopened packages with Gold Circle and K-Mart price stickers or tags still on them were found in defendant's bedroom. Defendant had no receipts and few explanations for the sixty items from K-Mart and Gold Circle found in her bedroom.

---

[5] R.C. 2923.03(D) provides:

"If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:

" 'The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.

" '[']It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.' "

All of the above corroborates the testimony of accomplice Payne. Defendant was not convicted solely on the basis of Payne's testimony. Defendant's fourth and last proposition of law is denied, and defendant's conviction is affirmed.

## II

The state's single proposition of law challenges the court of appeals' determination that the trial court impermissibly increased defendant's sentence because the trial judge concluded that defendant lied during her testimony.

The one-year determinate sentence given defendant is the median prison sentence permitted for a fourth degree felony. R.C. 2929.11(D)(2). R.C. 2929.13[6] sets forth factors a court must consider in favor of imposing a shorter or a longer sentence on a defendant convicted of a third or fourth degree felony. The statute specifically states that the factors listed "do not control the court's sentencing decision" nor is the trial judge limited to consideration of the matters listed where a definite term of imprisonment is imposed. R.C. 2929.13(C).

The court of appeals held that the trial court abused its discretion and reversed defendant's sentence, stating that "[f]rom the statements made by the court, it is clear the court imposed a jail sentence based *solely* on his perception that the * * * [defendant] lied during her testimony and no consideration was given to the criteria set forth in R.C. 2929.13." (Emphasis *sic*.)

Our review of the record reflects a different conclusion. Defense counsel's request for a presentence investigation report was denied without objection.

---

[6] R.C. 2929.13 provides:

"(A) The following do not control the court's sentencing decision, but shall be considered in favor of opposing a shorter term of imprisonment when determining the term of imprisonment for a felony of the third or fourth degree for which a definite term of imprisonment is imposed:

"(1) The offense was the result of circumstances unlikely to recur;

"(2) The victim of the offense induced or facilitated it;

"(3) There are substantial grounds tending to excuse or justify the offense, though not sufficient to establish a defense;

"(4) The offender acted under strong provocation;

"(5) The offender has no history of prior delinquency or criminal activity, or has led a law-abiding life for a substantial time before commission of the present offense;

"(6) The offender is likely to respond quickly to correctional or rehabilitative treatment.

"(B) The following do not control the court's sentencing decision, but shall be considered in favor of imposing a longer term of imprisonment when determining the term of imprisonment for a felony of the third or fourth degree for which a definite term of imprisonment is imposed:

"(1) The defendant, by the duties of his office or by his position, was obliged to prevent the particular offense committed or to bring the offenders committing it to justice;

"(2) The defendant held public office at the time of the offense, and the offense related to the conduct of that office;

"(3) The defendant utilized his professional reputation or position in the community to commit the offense, or to afford him an easier means of committing it, in circumstances where his example probably would influence the conduct of others.

"(C) The criteria listed in divisions (A) and (B) of this section do not limit the matters that may be considered in determining the term of imprisonment to be imposed for a felony of the third or fourth degree for which a definite term of imprisonment is imposed."

However, defense counsel orally presented to the court factors which defendant argues would mitigate in favor of a shorter sentence or probation. The court responded that *"one of the factors that the court takes into consideration is not only the history and the character of the individual and nature and circumstances of the offense, but the entire person,* including how they act during the trial process. * * *"* (Emphasis added.) By its own words, the court indicated that it considered other factors aside from its conclusions concerning O'Dell's veracity. Neither the statute nor the procedures established by this court mandate that a trial court set forth its reasons or specific consideration of the factors listed in R.C. 2929.13. A silent record raises the presumption that the trial court correctly considered the appropriate sentencing criteria. *State* v. *Adams* (1988), 37 Ohio St. 3d 295, 525 N.E. 2d 1361, paragraph three of the syllabus (applied to R.C. 2929.12, a statute similar to R.C. 2929.13).

The court of appeals' decision relied upon *State* v. *Jeffers* (1978), 57 Ohio App. 2d 107, 11 O.O. 3d 101, 385 N.E. 2d 641, and *Columbus* v. *Fugate* (Jan. 28, 1988), Franklin App. Nos. 87AP-771 and 87AP-772, unreported, both of which relied in turn on *Scott* v. *United States* (C.A.D.C. 1969), 419 F. 2d 264, and *Poteet* v. *Fauver* (C.A. 3, 1975), 517 F. 2d 393. These cases stand for the proposition that a sentence may never be increased because the defendant, in the opinion of the sentencing judge, lied during the trial. A rationale for these holdings is that the defendant should not be punished for the crime of perjury without having been first indicted and convicted of that offense.

The United States Supreme Court disapproved of *Scott* and *Poteet, supra,* in *United States* v. *Grayson* (1978), 438 U.S. 41, and noted that it has long been proper for the sentencing court to consider evidence heard during the trial as well as the demeanor of the accused. The court further observed that the defendant's truthfulness or lack thereof while testifying on his own behalf is "* * * probative of his attitudes toward society and [his] prospects for rehabilitation * * *." *Id.* at 50. While a defendant is guaranteed the right to a trial and should never be punished for exercising that right or for refusing to enter a plea agreement, there is no federal or state constitutional right to lie on the witness stand. A defendant's act of lying while under oath is probative of his prospects for rehabilitation. Such an act is one of the factors that a trial judge may consider when imposing sentence under R.C. 2929.13. The applicable statutes do not preclude the sentencing court from considering serious misbehavior by a defendant as observed by the sentencing court during trial. In our view, this position does not inhibit a defendant's exercise of the right to testify. As stated in *Grayson, supra:*

"* * * Nothing we say today requires a sentencing judge to enhance, in some wooden or reflex fashion, the sentences of all defendants whose testimony is deemed false. Rather, we are reaffirming the authority of a sentencing judge to evaluate carefully a defendant's testimony on the stand, determine — with a consciousness of the frailty of human judgment — whether that testimony contained willful and material falsehoods, and, if so, assess in light of all the other knowledge gained about the defendant the meaning of that conduct with respect to his prospects for rehabilitation and restoration to a useful place in society. Awareness of such a process realistically cannot be deemed to affect the decision of an accused but unconvicted defendant to testify truthfully in his own behalf." *Id.* at 55.

We therefore hold, as have most

courts subsequent to *Grayson, supra,* that when a sentencing judge is the same judge who presided over the defendant's trial, the defendant's act of lying under oath is a factor that may be considered along with other pertinent factors when imposing sentence. See Annotation (1984), 34 A.L.R. 4th 888; *State* v. *Stewart* (1980), 70 Ohio App. 2d 147, 24 O.O. 3d 198, 435 N.E. 2d 426. Accordingly, we hold that the trial court did not abuse its discretion when it considered defendant's demeanor and truthfulness as a witness in light of all the other factors present in this case.

We affirm the court of appeals with respect to defendant's conviction, but reverse with respect to defendant's sentence. The trial court's sentence is hereby reinstated.

*Judgment affirmed in part and reversed in part.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, H. BROWN and RESNICK, JJ., concur.