Bobby Jackson presents this delayed appeal from a judgment of the common pleas court entered pursuant to a jury verdict finding him guilty of aggravated robbery with a gun specification and sentencing him to six years incarceration. On this appeal, he claims denial of effective assistance of counsel, denial of a fair trial, and judicial error in instructions to the jury. For the reasons which follow, we find no merit to these assignments of error and therefore affirm his conviction.
The record here reveals that sometime after 3:30 a.m. on May 25, 1997, as Andre Payton drove home after leaving Len Roc's, a night club located on Miles Road in Cleveland, Payton's vehicle got a flat tire. Payton stopped at the corner of East 116th Street and Miles Avenue and he began to change the tire. He then heard a man yell, "Drop down," and when he looked around, he saw a man wearing a ski mask holding a gun about three inches from his face. The man then hit him in the head, and along with another gunman, went through his pockets and took his money and his keys. Both men then entered their car, and as they did so, it sped away.
After he finished changing the tire, Payton returned home and phoned police to report the incident. He described the men as African-American, stated that one of them wore a red Tommy Hilfiger shirt, and identified their vehicle as a white Dodge Neon.
Approximately the same time, an individual in the area of East 136th Street and Harvard Avenue flagged down Officers Guy Sako and Norman Saborski and reported that two black males had just forced him at gunpoint to lie on the ground, robbed him, and then drove off in a white Dodge Neon. In response to this report, police issued an all channel broadcast describing the suspects in order to alert other officers.
Shortly after hearing the bulletin, Officers John Freehoffer and Terrence Smith observed three black males in a white Chrysler Cirrus which they began to follow rather than trying to arrest its occupants. While following the vehicle, the officers learned the registration sticker did not match the license plate on the car, and on this basis they stopped the car and spoke with the driver, Bobby Jackson. When the officers asked the men to exit the vehicle, the passenger in the back seat fled. As Officer Freehoffer pursued him, another individual approached the officer and gave him a gun he found lying on the ground, apparently discarded during the chase. Smith then searched the passenger compartment of the car and recovered two ski masks, one of which was wrapped around another loaded gun.
Police officers then brought Payton to the scene of the arrest where he recognized a camouflage ski mask, one of the guns, the Chrysler Cirrus, and identified the red Tommy Hilfiger shirt worn by Andre Hicks.
Police then arrested Hicks and Bobby Jackson in connection with the Payton robbery and the grand jury indicted them for aggravated robbery with a gun specification. Hicks subsequently pled guilty to an amended indictment of robbery without the gun specification and agreed to testify for the state at the trial of Bobby Jackson.
On September 22, 1997, the court began Jackson's jury trial. The state called Andre Hicks who testified that he participated in the robbery of Andre Payton and that Jackson acted as the getaway driver. Hicks also stated that during their time in the cell together, he and Jackson agreed to claim they had been at Vel's, a local night club, at the time of the robbery. The state also presented testimony from Payton and from Officers Sako, Saborski, Freehoffer, and Smith, who described their parts in the investigation and arrest of Jackson.
Jackson testified in his defense and stated that he had been at Vel's the evening of the robbery, and stated that after leaving Vel's, he got a ride with some friends to a nearby gas station, where he saw Hicks and Antoine Jackson and then asked them for a ride home. He further stated that they told him he could have a ride, but that he would have to drive their car.
James Peterson, a bouncer who worked at Vel's, and James Philpot, who accompanied Jackson to Vel's that evening, also testified for the defense and corroborated Jackson's alibi. Philpot claimed he never lost sight of Jackson on the crowded dance floor the entire evening for more than five minutes.
Following the court's charge and the jury deliberation, the jury returned a verdict of guilty, and on November 10, 1997. the court sentenced Jackson to three years incarceration on the aggravated robbery count consecutive to a three year sentence on the gun specification.
Jackson filed a motion for delayed appeal which this court granted. He filed a brief containing three assignments of error, and his new appellate counsel filed a brief containing eight supplemental assignments of error. Jackson's first assignment of error, and his first and second supplemental assignments of error concern a claim of ineffective assistance of counsel. They state:
I.
 BOBBY JACKSON WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION WHEN HIS TRIAL ATTORNEY FAILED TO MAKE A TIMELY OBJECTION.
I.
 DEFENDANT WAS DENIED A FUNDAMENTALLY FAIR TRIAL AND THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HEARSAY EVIDENCE WAS OFFERED BY THE PROSECUTION.
II.
 DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN NO MOTION TO SUPPRESS WAS FILED BY DEFENSE COUNSEL.
Jackson contends he received ineffective assistance of counsel because his attorney failed to object to testimony from Officers Sako and Saborski regarding the second robbery, and because his attorney failed to file a motion to suppress evidence arising out of the vehicle stop. The state maintains that Jackson's counsel's performance did not fall below an objective standard of reasonable representation, such as to prejudice Jackson.
The issue before us, then, is whether Jackson received effective assistance of counsel in this case.
In Strickland v. Washington(1984), 466 U.S. 668, 687, the court set out the two-part test we follow in addressing claims of ineffective assistance of counsel:
 * * * First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.
In order to show prejudice, the defendant must demonstrate a reasonable probability exists that, absent counsel's error, the result of the trial would have been different. See State v.Bradley(1989), 42 Ohio St.3d 136, paragraph three of the syllabus.
In State v. Andrews(1991), 57 Ohio St.3d 86, 87, the Ohio Supreme Court reiterated the standard by which a police investigatory stop and any evidence obtained therefrom is measured under the law of Terry v. Ohio(1968), 392 U.S. 1:
 * * * a police officer may stop and investigate unusual behavior, even without probable cause to arrest, when he reasonably concludes that the individual is engaged in criminal activity. In assessing that conclusion, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. Furthermore, the standard against which the facts are judged must be an objective one: would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?
In this case, Officers Sako and Saborski testified regarding a second robbery which resulted in issuance of an all points bulletin leading to Jackson's arrest shortly after the robbery of Payton. Evid.R. 404 (B) provides as follows:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Thus, Evid.R. 404 (B) permits evidence of other acts of a defendant if done to show the identity of the perpetrator. On this singular basis, we cannot conclude ineffective assistance of counsel.
Further, Officers Freehoffer and Smith stated they stopped the white Chrysler driven by Jackson based upon the bulletin describing a white Neon vehicle and based upon the fact that the license plate sticker on the Chrysler did not match the license plate on the vehicle. Thus, because the facts available to the officers would warrant a reasonable man in believing a stop was appropriate, Jackson's counsel did not perform ineffectively in failing to make a motion to suppress evidence obtained during the stop.
In addition, Jackson had a full opportunity to present his alibi defense with his testimony and that of two other witnesses. The state, by contrast, presented testimony from Andre Hicks, a co-defendant who testified for the state in exchange for the opportunity to plead guilty to a reduced charge. After full consideration of these issues, the jury returned a guilty verdict against Johnson. Thus, this record does not support the conclusion that but for the failure of counsel to object to the testimony of Officers Sako and Saborski and failure to file a motion to suppress, the trial outcome could have been different.
Accordingly, these assignments of error are therefore not well taken and they are overruled.
In his second, third supplemental, fourth supplemental, and fifth supplemental assignments of error, Jackson states as follows:
II.
 THE TRIAL COURT COMMITTED PLAIN ERROR AND BOBBY JACKSON WAS DENIED HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW WHEN THE COURT ALLOWED INADMISSIBLE HEARSAY TESTIMONY.
III.
 DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE PROSECUTOR QUESTIONED A DEFENSE WITNESS CONCERNING A JUVENILE ADJUDICATION.
IV.
 DEFENDANT WAS DENIED A FAIR TRIBUNAL BY REASON OF INTERFERENCE OF THE COURT AND COMMENTS BY THE COURT.
V.
 DEFENDANT WAS DENIED A FAIR TRIAL WHEN EVIDENCE OF OTHER CRIMES WERE OFFERED WHICH DEFENDANT WAS NOT CHARGED AND INSTRUCTION WAS GIVEN CONCERNING THE USE AND CONSIDERATION OF THIS EVIDENCE.
Here, Jackson contends the court denied him his right to a fair trial by permitting hearsay testimony regarding other uncharged crimes, by allowing the prosecutor to question a defense witness regarding his juvenile record, and by interfering with his testimony. The state maintains the court's actions were proper and did not deny Jackson a fair trial.
The issues then presented for our consideration concern whether the court's actions deprived Jackson of a fair trial. We shall address these specific areas of concern: hearsay testimony regarding other crimes, evidence concerning Jackson's juvenile record, and allegations of judicial prejudice.
Regarding the testimony of officers Sako and Saborski concerning the alleged second robbery, two factors are paramount: one, Johnson was not charged with participation in this alleged robbery, but he was apprehended as a result of the broadcast following the report of these officers. This evidence provides a basis to explain the circumstances leading to the apprehension of Bobby Jackson; two, evidence of other acts of a defendant, are admissible for purposes of showing identity. Hence, we cannot conclude error in the presentation of this testimony.
Evidence concerning Jackson's juvenile record, as conceded by the state, should not have been admitted into evidence and the trial court should have been more careful in this regard. Upon review, however, and considering the other evidence presented by the state and by Jackson in this case, the error is harmless. Crim. R. 52(A) defines harmless error and states:
 Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.
While in another case with a closer question, the admission of this kind of evidence may be prejudicial, this case squarely offers the credibility of Jackson's alibi witnesses against Hicks' eyewitness testimony identifying Jackson as the getaway driver. Here, these credibility issues have been resolved by the jury. Hence Jackson's prior juvenile record did not enter into the material considerations regarding his actions during the early morning hours of May 25, 1997, and did not affect his substantial rights in this case. Accordingly, though an obvious judicial error, we have concluded it to be harmless in this case. Also, Jackson complains of judicial interference and improper comment by the court during trial. From a review of the transcript regarding Jackson's testimony on cross-examination, the court admonished Jackson several times to answer questions only, "yes" or "no"; he persisted in trying to respond to the prosecutor's questions, and the trial court at one point indicated that he would be gagged and given cards saying "Yes," or "No." (Tr. 414) However, Jackson did not move for a mistrial on this basis, and although Jackson's brief cites to Cannon 3(E) (1) of the Code of Judicial Conduct pertaining to disqualification, at no time did Jackson ask the court to recuse itself.
We are mindful of Cannons 3(B)(3) and 3(B)(4) which state:
 (3) A judge shall require order and decorum in proceedings before the judge.
 (4) A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, and shall require similar conduct of lawyers, and of staff, court officials, and others subject to the judge's direction and control.
We recognize that a recalcitrant litigant can exhaust judicial patience; however, the court must adhere to the Cannons and ought to resolve these matters in a more professional manner.
After review of the examination and cross-examination of the defendant and the colloquy exchanged between the court, counsel, and the defendant, we are not persuaded the court injected itself into the proceedings to the point of impartiality or of committing reversible error.
Thus, Jackson's second, third supplemental, fourth supplemental, and fifth supplemental assignments of error are not well taken.
In his third assignment of error, Jackson states as follows:
III.
 THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN THERE IS NO SUBSTANTIAL EVIDENCE UPON WHICH A TRIER OF FACT COULD REASONABLY CONCLUDE THAT THE CHARGES HAD BEEN PROVEN BEYOND A REASONABLE DOUBT.
Jackson contends his aggravated robbery conviction with the gun specification is against the manifest weight of the evidence, while the state maintains its evidence is consistent with the jury verdict. The issue before us, then, is whether the verdict is against the manifest weight of the evidence.
The test to determine whether a verdict is against the manifest weight of the evidence is found in State v. Martin(1983),20 Ohio App.3d 172, where the court stated at 175:
 * * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed * * *.
In this case, the state presented testimony from four police officers, an accomplice who identified Jackson as the getaway driver, and the victim. Although Jackson presented alibi testimony, the jury apparently chose not to believe that testimony. Since the issue of credibility of witnesses is left to the factfinder, and since the factfinder is free to believe some, all, or none of the testimony of any witness, we cannot say from the evidence presented and the reasonable inferences drawn therefrom, that the jury clearly lost its way in convicting Jackson of aggravated robbery. Thus, Jackson's third assignment of error is not well taken and is overruled.
The sixth supplemental, seventh supplemental, and eighth supplemental assignments of error state:
VI.
 DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT GAVE AN INCOMPLETE INSTRUCTION ON CO-CONSPIRATOR TESTIMONY.
VII.
 DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE COURT GAVE A DILUTED INSTRUCTION CONCERNING PURPOSE.
VIII.
 DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT GAVE AN INSTRUCTION ON AIDING AND ABETTING WHICH WOULD ALLOW DEFENDANT TO BE CONVICTED REGARDLESS OF WHETHER HE POSSESSED THE CULPABLE MENTAL STATE REQUIRED FOR THE COMMISSION OF THE PRINCIPAL OFFENSE.
Jackson claims the court erred in instructing the jury on issues regarding the testimony of a co-conspirator, the culpable mental state of purpose, and the law of aiding and abetting. The state maintains the court gave adequate instructions to the jury. The issues here concern whether the court erred in any of its instructions.
We recognize that the court is required to charge the jury on all relevant questions of law provided the issues are raised by the evidence at trial, and a failure to do so constitutes an error of law. See State v. McCarthy(1992), 65 Ohio St.3d 589,593.
Crim. R. 30 (A) provides in relevant part:
 On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection.
Thus, in the absence of plain error, a defendant may not claim error on appeal arising from a jury instruction unless a proper and timely objection is made and properly preserved in the record.
R.C. 2923.01(H)(2) pertains to co-conspirators and provides as follows:
 If a person with whom the defendant allegedly has conspired testifies against the defendant in a case in which the defendant is charged with conspiracy and if the testimony is supported by other evidence, the court, when it charges the jury, shall state substantially the following:
 "The testimony of an accomplice that is supported by other evidence does not become inadmissible because of the accomplice's complicity, moral turpitude, or self-interest but the admitted or claimed complicity of a witness may affect the witness' credibility and make the witness' testimony subject to grave suspicion, and require that it be weighed with great caution."
 "It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."
R.C. 2923.03(D) provides as follows:
 If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of * * * an offense, the court, when it charges the jury, shall state substantially the following:
 "The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution." * * *
Our review of the jury instructions in this case reveals the court gave the following instruction regarding conspiracy, to which Jackson did not object:
 Now, you have heard testimony from Andre Hicks, another person who was charged with this crime, and he has already pled. He was said to be an accomplice. An accomplice is one who knowingly assists or joins another in the commission of a crime.
 Whether Andre Hicks was an accomplice and the weight to give to his testimony are matters for you to determine from the facts and circumstances in evidence.
* * *
 It is for you, the jurors, in light of all of the facts presented to you from the witness stand to evaluate such testimony and determine its quality and worth or its lack of quality and worth.
* * *
 To weigh the evidence, you must consider the credibility or believability of each person testifying. You should apply the tests for truthfulness which you apply in your everyday lives.
* * *
 In determining the credibility of the witnesses, you should consider the interest or bias the witness has in the outcome of the verdict; his or her appearance, manner and demeanor while testifying; his or her candor and frankness or lack of candor and frankness; the consistency of his or her testimony with other known facts in this case, his or her accuracy of memory or inaccuracy of memory; his or her intelligence or lack of intelligence; the reasonableness or unreasonableness of his or her testimony; the opportunity the witness had to see or hear or know the truth of the facts and circumstances concerning the things to which he or she has testified; and any and all other facts and circumstances surrounding the testimony which the jury in your judgment would add or detract from the credibility and weight of his or her testimony. Applying these tests, you will assign to the testimony of each witness the weight that you deem proper.
* * *
Here, the court omitted the complete charge regarding accomplice testimony as set forth in R.C. 2923.03(D). We recognize that in State v. Ferguson(1986), 30 Ohio App.3d 171, we held that failure to provide such an instruction is reversible error. However, in Ferguson, the court prohibited testimony relating to the fact that the witness there, a co-defendant, had been granted immunity; here, the record reflects the prosecutor brought out on direct examination that Hicks had pled guilty and awaited sentencing, and that nothing had been promised to him in exchange for his testimony. (Tr. 141-150). On cross-examination, defense counsel inquired further about the nature of Hicks' plea and the bearing his testimony had on his sentencing. (Tr. 209-212). In Ferguson, we stated at 174:
 * * * The trial court's prohibition of this testimony, together with the inadequate instruction, had the effect of factoring out consideration of critical information relating to the credibility of the accomplice's testimony. * * * (Emphasis added).
Here, we believe the testimony regarding the plea had been the subject of full inquiry by both counsel, and because the court gave a partial instruction regarding an accomplice and a correct credibility instruction, Ferguson is distinguishable from the facts in this case.
Finally in this regard, the record reflects that at the conclusion of its charge the court asked counsel for any additions, deletions, or objections to any of the instructions, and none were forthcoming from either the prosecutor or the defense counsel. Thus the matter has not properly been preserved for appeal and based upon the facts here, where counsel had a full opportunity to examine Hicks on the bias issue, we cannot conclude the court's error in failing to provide a more complete accomplice instruction affected a substantial right such as to constitute plain error.
Jackson further alleges the court's instruction on purpose deprived him of a fair trial.
R.C. 2901.22(A) defines purpose and provides:
 A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.
In this case, the court gave the jury the following instruction, without objection by Jackson:
 It must be established in this case that at the time in question there was present in the mind of the defendant, Bobby Jackson, a specific intention to deprive Andre Payton of his property.
 Purpose to deprive another of his property is an essential element of the crime of aggravated robbery. A person acts purposely when it is his specific intention to cause a certain result.
 It must be established in this case that at the time in question there was present in the mind of the defendant, Bobby Jackson, a specific intention to deprive Andre Payton of his property.
 A person acts purposely when the gist of the offense is a prohibition against conduct of a certain nature regardless of what the offender intends to accomplish, thereby if it is in his specific intention to engage in to [sic] conduct of that nature.
 Purpose is a decision of the mind to do an act with a conscious objective of producing a specific result or engaging in specific conduct. To do an act purposely is to do it intentionally and not accidentally. Purpose and intent really mean the same thing. The purpose with which a person does an act or brings about a result is known only to himself unless he expresses it to others or indicates it by his conduct.
 The purpose with which a person does an act or brings about a result is determined from the manner in which it is done, the means or weapon used and all other facts and circumstances in evidence.
Viewing this instruction as a whole, it substantially complies with the statutory requirements, thus, the court did not commit plain error in giving this instruction.
Jackson also contends the court instructed the jury such as to allow him to be found guilty of aiding or abetting regardless of whether it found him to have the requisite culpable state. The record, however, reveals the court also gave the jury the following instruction:
 The mere presence of a person does not in and of itself constitute aiding and abetting or amount to complicity if that person did no act in furtherance of the crime or commission of the crime and was merely there.
Accordingly, Jackson's sixth supplemental, seventh supplemental, and eighth supplemental assignments of error are without merit and are therefore overruled.
Accordingly, we affirm the judgment of the trial court.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, J. and PATRICIA A. BLACKMON, J.,CONCUR
 ___________________________________ TERRENCE O'DONNELL PRESIDING JUDGE
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26 (A); Loc. App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also S.Ct.Prac.R. II, Section 2(A)(a).