### State v. Lancaster
### Case No. 14212
### Summit County, (9th)
### Decided January 10, 1990
[Cite as 1 AOA 352]

*Lynn Slaby, Prosecuting Attorney, City-County Safety Bldg., Akron, OH 44308 for Plaintiff.*

*Thomas A. Shumaker, Attorney at Law, 159 S. Main St., Suite 906, 06, Akron, OH 44308 for Defendant.*

REECE, J.

#### A

In January, 1988, Detective Timothy Dimoff, of the City of Akron Police Department, met with officials of the Burger Iron Company (Burger) regarding his receipt of anonymous information indicating that illegal drug transactions were occurring in Burger's Mogadore, Ohio fabricating facility. Acting upon the detective's urgings, Burger contracted with Pinkerton Inc., a private security agency, to employ a Pinkerton agent to act as an undercover information source as part of the Burger work force. Ray Steadman, who had been with Pinkerton for approximately three months, was chosen for the task. Steadman completed a three-hour training course in undercover operations which was offered by Detective Dimoff through his private business, Substance Abuse Consulting Services, and also taught by the detective.

Recognizing that the Burger Mogadore facility was outside the jurisdiction of the Akron Police Department, Detective Dimoff arranged with Chief Marvin G. Wilmoth, Jr. for the involvement of the Mogadore Police Department. Thereafter, Pinkerton, Detective Dimoff, Chief Wilmoth and Burger officials monitored the situation beginning in June, 1988, when Steadman joined the Burger Mogadore work force as a laborer. Steadman mailed daily, handwritten reports to Pinkerton, which were transcribed and forwarded to Burger, and made available to Dimoff and

Wilmoth.

With the assistance and acknowledgement of Burger, Dimoff and Wilmoth, Steadman made "buys" of marijuana at the facility on August 19, 23, and 25, and September 1, 1988, involving Burger employees Steve Gregory, Kenneth Bennett and Richard Lancaster, the appellant herein. Lancaster was arrested at his home on September 20, 1988, by officers of the Mogadore Police Department. On October 19, 1988, the Summit County Grand Jury returned an indictment charging Lancaster, Bennett and Gregory with two counts each of trafficking in marijuana. Bennett and Gregory each entered guilty pleas to one count of trafficking, receiving probation and dismissal of the other count. Lancaster pleaded not guilty and proceeded to a jury trial on both counts.

### B

At trial, Steadman testified that he made two marijuana purchases from Lancaster, on August 23 and September 1, 1988. The first involved approximately one-quarter ounce of marijuana, which Steadman testified he received by paying Lancaster $35, and then using Lancaster's locker key to enter Lancaster's locker and obtain the marijuana. The second involved approximately one ounce of marijuana, which Steadman testified that he obtained by giving $120 to Lancaster, who passed it to Bennett, who delivered to Steadman a soft drink cup with the marijuana concealed inside. Steadman was permitted to testify, over objection, to specific conversations with and responses by Gregory and others, which further implicated Lancaster.

Bennett testified on behalf of Lancaster, denying Lancaster's involvement in the marijuana purchases, specifically in regard to the September 1, 1988 purchase of approximately one ounce of marijuana. The state vigorously cross-examined Bennett upon his testimony, as the plea he had previously entered was to the first count of the indictment, the August 23, 1988 sale of one-quarter ounce of marijuana, while the count relating to the September 1, 1988 sale had been dismissed. At this point, the court chose to actively question Bennett as to the veracity of his testimony, and concluded by ordering Bennett, in the presence of the jury, to report to the Summit County Probation Department the next morning for a polygraph examination to measure the truth of his in-court testimony. Lancaster's counsel moved the court for mistrial following Bennett's

testimony, which motion was denied.

Lancaster testified on his own behalf, denying any involvement in the transactions, and any involvement with marijuana. During its charge to the jury, the court specifically mentioned Bennett and his testimony, and instructed the jury that the state claimed that Bennett was Lancaster's accomplice, and that the testimony of a "person whom you find to be an accomplice should be viewed with grave suspicion and weighed with great caution." Lancaster objected to the charge, and was overruled by the court. The jury returned a verdict of guilty upon both counts on June 21, 1989. The court sentenced Lancaster to two one-year concurrent terms of imprisonment and a $2,000 fine. Lancaster appeals, asserting four assignments of error.

### C
### ASSIGNMENT OF ERROR I

"The trial court as (sic) a matter of law and fact and abused its discretion to defendant-appellant's prejudice by its action in commenting on the credibility of and threatening a key defense witness in the presence of the jury, thereby invading the province of the jury and denying defendant due process and the right to a fair and impartial jury trial."

Lancaster argues that the court abandoned its role by invading the province of the jury by commenting upon and questioning the credibility of defense witness Kenneth Bennett, and thus, denying Lancaster the right to due process.

During cross-examination by the state, Bennett alleged confusion as to the date of the count to which he had entered a plea. As this juncture, the court entered the questioning by directing the following to Bennett:

"* * *.
"THE COURT: Let me just tell you something, Mr. Bennett. I don't know how you slipped by the cracks here. You got through a crack, but somehow or another, you got a probation, didn't you? Prosecutor recommended that.
"What's one of the conditions? You obey all laws of this state in the future and refrain from offensive conduct. You know perjury is an offensive conduct. It's a crime. "Now, you want to stick with your story or do you want to change it?

"THE WITNESS: Your Honor, I'm not telling any lies.
"THE COURT: You willing to take a polygraph after we are all through here?
"THE WITNESS: Yes, sir.
"THE COURT: Okay. Fine."
"* * *."

The state continued to question Bennett as to the count to which he had pleaded; although he continued to confuse the dates, he consistently referenced the one-ounce sale. The court re-entered, questioning Bennett:

"* * *.
"THE COURT: Do you understand the question, Mr. Bennett?
"THE WITNESS: I'm sorry, I don't.
"THE COURT: Then why don't you listen?
"THE WITNESS: I was trying. I just got confused on the dates.
"THE COURT: There are two alleged offenses here, one in August, one is September 1st.
"The question is, you had nothing to do with the September 1st sale then, did you?
"THE WITNESS: Just that ounce of marijuana."
"* * *.

Following redirect questioning by Lancaster's counsel, the court stated to Bennett, in the jury's presence.

"* * *.
"THE COURT: Mr. Bennett, I want you to report to the Probation Department tomorrow morning and I want you to be prepared to take a polygraph examination sometime tomorrow concerning what you just testified to here. Okay.
"THE WITNESS: Okay.
"THE COURT: Nine o'clock in the morning.
"THE WITNESS: Okay.
"* * *."

Lancaster moved for mistrial based upon the court's questioning, remarks and order regarding Bennett before the jury. The court denied the motion without explicit reasoning.

The trial judge is more than a mere umpire; in addition, absolute prohibition exists to preclude comment by a * during trial. *State* v. *Thomas* (1973), 36 Ohio St. 2d, 71. His active duties require maintaining justice and seeing that the truth is developed; for such purposes, he may put proper questions to the witnesses. *Jenkins* v. *Clark* (1982), 7 Ohio App. 3d 93, 97. The trial judge may, in his discretion, propound to witnesses proper and pertinent questions designed to develop the true character of the proceedings, which counsel has failed to propound, thereby eliciting testimony more fully revealing the facts of the case. *Id.* In addition, Evid. R. 614 allows the trial court to interrogate witnesses in an impartial manner; the court, upon its own motion, may call witnesses to testify. *State* v. *Allen* (April 20, 1988), Summit App. Nos. 13207 and 13208, unreported. See *Farrell* v. *Farrell* (March 1, 1989), Summit App. No. 13810, unreported.

The above exchanges do not, however, demonstrate complete impartiality by the trial court in its questioning of Bennett. Rather, the trial court's frustration with Bennett over his testimony concerning dates and the count to which he pleaded guilty evidences the court's disposition as to Bennett's credibility. These remarks before the jury thus tainted the jury's role as the determiner of witness credibility, and denied Lancaster due process. Accordingly, Lancaster's first error assigned is well taken, and his conviction must be reversed.

Our disposition of Lancaster's first error assigned renders determination of the remaining assignments of error largely advisory. App. R. 12(A), however, mandates our consideration.

### ASSIGNMENT OF ERROR II
"The trial court erred as a matter of law and fact and abused its discretion to defendant-appellant's prejudice by permitting hearsay testimony over objection of defendant, the effect of which was to bolster the credibility of the sole witness against defendant and thereby deny defendant due process and a fair trial."

Lancaster claims the court abused its discretion by permitting Steadman to offer hearsay testimony regarding conversations with Steve Gregory. Hearsay is defined in Evid. R. 801(C) as "*** a statement, other them one made by declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." In this case, Steadman testified to his questions to Gregory, and Gregory's responses, and to Gregory's participation in a drug sale to Steadman. Steadman then testified that he talked with

Lancaster about his dealings with Gregory, and at this point Lancaster offered to supply marijuana to Steadman. The state asserts that Steadman's testimony served only to provide background information to explain Lancaster's involvement. Lancaster argues that Steadman's testimony was elicited only to bolster Steadman's credibility, and was highly prejudicial and should have been excluded.

The trial court has great discretion in admitting evidence, and absent clear abuse and material prejudice to the complainer, its decisions will not be reversed on appeal. *State v. Long* (1978), 53 Ohio St. 2d 91, 98. In this case, however, Steadman was permitted to testify, over objection, to conversations with Gregory which led to his contact with Lancaster. The state did not call Gregory as a witness, although he had previously agreed to cooperate with and testify for the state. Thus, Gregory's statements, offered through Steadman, were not subject to cross-examination. Accordingly, the trial court erred by overruling Lancaster's objections to Steadman's testimony, and Lancaster's second error assigned is well taken.

### ASSIGNMENT OF ERROR III

"The trial court erred as a matter of law and fact and abused its discretion to defendant-appellant's prejudice by instructing the jury over defendant's objection in such a matter as to reflect negatively on the credibility of a key defense witness thereby invading the province of the jury as the sole judges of the credibility of witnesses and denying defendant due process and a fair trial."

Lancaster urges reversal predicated upon the court's charge to the jury regarding accomplice testimony. The state counters that the court's charge fulfilled the purpose of the law, and that even if it overstepped those bounds, any error obtained thereby was harmless. Pursuant to R.C. 2923.03(D), "[n]o person shall be convicted of complicity under this section solely upon the testimony of an accomplice, unsupported by other evidence." In *State v. Myers* (1978), 53 Ohio St. 2d 74, 75, our Supreme Court stated:

"* * *In this day of plea bargaining and immunized testimony, * * * it is vitally important that *one implicating an accomplice* do something more than point a

finger. * * *." (Emphasis added.)

Thus, a proper jury charge referencing accomplices includes instructing the jury that the testimony of a witness found to be an accomplice may be considered the same as any other witness', but only after instructing the jury on the special motive that an accomplice may have to distort his testimony, and after advising the jury that such testimony should be carefully examined and used with caution. *State v. Ferguson* (1986), 30 Ohio App. 3d 171, 174, citing *State v. Simms* (1983), 9 Ohio App. 3d 302.

The above case law and R.C. 2923.03(D) all contemplate circumstances where the alleged accomplice arranges to, and subsequently does, testify on behalf of the state against the defendant. In this case, Bennett testified in Lancaster's defense, and was not presented as a prosecution witness. Combined with the court's earlier remarks during Bennett's testimony, this charge worked a prejudice against Lancaster which the court declined to cure on objection. Accordingly, Lancaster's third error assigned is well taken.

### ASSIGNMENT OF ERROR IV

"The trial court erred as matter of law and fact and abused its discretion to defendant-appellant's prejudice by predicating its sentence and the denial of defendant's motion to suspend further execution of sentence solely on the fact that defendant had availed himself of his constitutional right to a trial by a jury of his peers, and not upon the criteria set forth by statute."

Lancaster claims that the court predicated its sentence of incarceration on Lancaster's decision to exercise his right to trial by jury.[1] Lancaster quotes the following colloquy between himself and the trial court at sentencing to support his contentions:

"* * *.
"THE COURT: All right. What do you have to say, Mr. Lancaster?
"THE DEFENDANT: I don't know, sir. I just -- I don't think this is right, but your judgment -- you judge me, sir.
"THE COURT: What don't you think is right?
"THE DEFENDANT: I didn't do this. I did not do that.

"THE COURT: We went through all that. We had a jury trial and the jury found that you did do these things.

"THE DEFENDANT: Yes, sir. I'm not a bad person.

"THE COURT: As a matter of fact, Mr. Lancaster, that's one of the reasons I took into consideration as far as the co-defendants in this case was concerned, some of them had lost jobs that they had for a number of years.

"THE DEFENDANT: Yes, sir.

"THE COURT: But they had the good sense to come in here and admit to what they had done and show some remorse.

"THE DEFENDANT: Yes sir.

"THE COURT: But that was not the case with you. The prosecutor even offered you probation if you would enter a plea of guilty and you refused to do that.

"It's a little late to ask for leniency by the Court now.

"All right. It's the sentence of the Court, Mr. Lancaster, that you be committed to the Ohio State Penitentiary for a flat sentence of one year on each of the two offenses. The offenses will run concurrently with one another.

"You are also ordered to pay the court costs of these proceedings."

"* * *."

As a general rule, the severity of sentence imposed in conformity to the law rests in the sound discretion of the trial court. *State* v. *Williams* (1982), 7 Ohio App. 3d 160, 162. A defendant cannot, however, be punished simply for exercising his right to trial. *Columbus* v. *Bee* (1979), 67 Ohio App. 2d 65, 77. Thus, we need to determine whether Lancaster was in fact punished for exercising that right. *State* v. *Mazo* (June 18, 1989), Lorain App. No. 88CA004432, unreported.

At first blush, the trial court's statements might suggest improper consideration by the trial court regarding Lancaster's choice to go to trial. We will not, however, speculate as to the meaning of one section of a sentencing transcript without considering it within the total context in which it was made.

Following the quoted passages above, the trial court continued:

"* * *.

"Maybe you don't realize it, but selling narcotics is a serious business and when you are released, I hope that you will have second thoughts about ever trying that again, because the second offense is much more serious than the first offense is.

"Now, you have the right to file an appeal of your conviction. If you don't have the money or the funds with which to pay a lawyer to represent you in your appeal, the Court will appoint a lawyer (sic) to represent you and file your notice of appeal.

"Do you want the Court to appoint a lawyer for you or are you able to finance your own legal services?

"THE DEFENDANT: Yeah.

"MR. SHUMAKER: He has been out of a job since his arrest back in September, Your Honor. He has no money.

"THE COURT: Mr. Shumaker has indicated he is willing to handle your appeal for you.

"Do you want me to appoint Mr. Shumaker?

"THE DEFENDANT : Yes, sir.

"THE COURT: I will appoint Mr. Shumaker to represent you in the appeal then."

"* * *."

Viewed in their entirety, we cannot find any indication of vindictiveness or retaliation in the remarks of the trial court. While the trial court's use of language may have been ill-chosen, we find no error. The clear import of the court's comments is to convey to Lancaster the seriousness of his convictions, and provide sound counsel that further offenses could result in a more severe penalty. We also note that the trial court used similar language in notifying Lancaster of his right to an appeal, and honored Lancaster's request by appointing his trial counsel as his counsel upon appeal at the sentencing hearing. In addition, the record does not reflect objection by Lancaster to what he now terms to be an error in sentencing.

Upon consideration, the record does not reflect that Lancaster's sentence was based upon improper motive or vindictiveness. Accordingly, Lancaster's fourth error assigned is not well taken.

### D

Based upon the foregoing, Lancaster's conviction is vacated, and this cause is remanded to the trial court for a new trial and further proceedings consistent with this opinion

and the law.

The Court finds that there were reasonable grounds for this appeal.

We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E).

CIRIGLIANO, J., MAHONEY, J., Concur.

(Mahoney, J., retired Judge of the Ninth District Court of Appeals, sitting by assignment pursuant to Article IV, Section 6(C), Constitution).

---

[1] Under these circumstances, the trial court's accomplice charge was improper, as it was not warranted by the testimonial evidence presented.

[2] Lancaster also references the court's remarks at the hearing upon Lancaster's motion for shock probation, on August 17, 1989, and assigns error thereto. Lancaster's notice of appeal, filed on July 26, 1989, does not (and could not) reference the shock probation hearing.

The record does not demonstrate that Lancaster moved this or any court for leave to amend the notice of appeal to include the alleged error of the shock probation hearing. In addition, Lancaster did not file any separate notice of appeal regarding the August 17, 1989 hearing. Accordingly, we will not consider any error with respect to that hearing.