OPINION
On February 5, 1997, the Stark County Grand Jury indicted appellant, Donald Laird, on one count of rape in violation of R.C.2907.02, one count of kidnapping in violation of R.C. 2905.01, one count of felonious assault in violation of R.C. 2903.11 and two counts of carrying a concealed weapon in violation of R.C.2923.12. Said charges arose from an incident on December 1, 1996 involving Anissa DeVault and an incident on January 28, 1997 involving Christina Spencer. Both Ms. DeVault and Ms. Spencer are known prostitutes.
A jury trial commenced on May 27, 1997. The jury found appellant guilty as charged. By judgment entry filed June 8, 1997, the trial court sentenced appellant to a total determinate term of thirty-one years in prison and labeled appellant a sexual predator.
Appellant filed a notice of appeal and this matter is now before this court for consideration. Assignments of error are as follows:
I
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN THE ADMISSION OF EVIDENCE IN VIOLATION OF EVIDENCE RULE 404, THEREBY VIOLATING HIS DUE PROCESS RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTION.
II
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN OVERRULING HIS RULE 29 MOTION FOR ACQUITTAL AS TO THE CHARGE OF FELONIOUS ASSAULT IN VIOLATION OF HIS DUE PROCESS RIGHTS WHEN THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE CHARGE OF THE INDICTMENT.
III
 THE VERDICT AS TO THE RAPE AND KIDNAPPING CHARGES OF DECEMBER 1, 1996 ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
IV
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN THE ADMISSION OF HEARSAY EVIDENCE DURING THE H.B. 180 HEARING, THEREBY VIOLATING HIS DUE PROCESS RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS.
V
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN INVOKING THE MAXIMUM SENTENCE PURSUANT TO O.R.C. § 2929.14(C) AND CONSECUTIVE TERMS PURSUANT TO O.R.C. § 2929.14(E)(3) IN VIOLATION OF THE APPELLANT'S DUE PROCESS RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTION.
VI
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN DENYING HIS MOTION TO MERGE THE CHARGES OF KIDNAPING AND RAPE AND FELONIOUS ASSAULT AND CCW IN VIOLATION OF O.R.C. § 2941.25 THEREBY VIOLATING APPELLANT'S DUE PROCESS RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS.
 I
Appellant claims the trial court erred in admitting evidence of other acts contrary to Evid.R. 404. We agree but find said error to be harmless.
The complained of testimony was elicited from Lara Adams. Ms. Adams testified about an incident in 1991 involving appellant:
Q. Can you tell the jury what happened?
 A. I was on Rex Avenue in between Fourth and Fifth Street making money.
Q. Working as a prostitute?
 A. Yes. It was afternoon, late afternoon and it was summertime. I had be — I, I'm not sure how long I had been out there at, on that particular day, maybe a couple hours, and a car came by, asked me if I was going out, if I was dating, and I said yes. And I proceeded to get into the car on the passenger side.
 And when I got in and I turned to ask him what he wanted, what he was looking for, he grabbed me by the back of my neck and pulled a knife and held it to the front of my neck and pushed me down onto the floorboard of the car and told me to shut up, bitch or he would kill me.
* * *
 A. He drove. I, I began to cry and get upset, and he tol — he just kept telling me to shut up, bitch, whore or he would kill me. And I, I asked him to please not do this, please don't hurt me, just to let me out and I wouldn't say anything to anybody that this had happened, and he continually told me to shut up. And at — it was a short ride. I was down on the floor; I didn't see what direction we were going. When I — when he finally did stop, he had asked me to get out of — he, he told me to take my clothes off.
* * *
 Q. After you reached that location, at some point were you outside of that car?
A. After he had raped me.
Vol. I T. at 128, 132-133 and 133-134, respectively.
Pursuant to R.C. 2945.59, appellee, the State of Ohio, had requested a hearing on the admissibility of Ms. Adams's testimony. Appellee argued Ms. Adams's testimony of the 1991 incident was identical to the two incidents sub judice: "for being taken to a secluded area, the knife being involved and also being abandoned after the act." Id. at 10. The trial court permitted Ms. Adams's testimony stating as follows:
 THE COURT: Well, I think the utilization of the questions together with instructions to the witness would be sufficient, and I have no objection since I have to instruct the jury as to the, as to the only reasons whereby such testimony is admissible I can, if desired, instruct the jury that the, that I'm not permitting any testimony relative to the presence or absence of actual sexual conduct, but, but merely for the purposes of motive, opportunity, intent, preparation, etcetera as, as set forth in Rule 404.
 Id. at 11.
Prior to Ms. Adams's testimony, the trial court instructed the jury as follows:
 THE COURT: Ladies and gentlemen, I understand from counsel that the first witness will be one Lara Adams who apparently will testify as to certain conduct which is not connected directly with any of the criminal charges contained in the indictment. Normally such testimony would not be admissible to show that the, that the accused committed the acts charged in this particular case, and that is, that is the situation here, but the rule provides that evidence of other acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 So the Court is, is permitting the testimony, and then it will be up to the jury to determine as to whether or not the evidence presented falls within those classifications but cannot be utilized or received by the jury to determine because other acts are alleged that he committed, that by itself that he committed, any of the charges contained herein.
 I would further instruct the jury that for other legal reasons I'm not permitting questions to be asked as to whether any sexual conduct did or did not take place with Lara Adams.
 Id. at 124-125.
Appellant argues the trial court's ruling and the admission of Ms. Adams's testimony which included testimony of sexual conduct specifically excluded by the trial court violated Evid.R. 404 and R.C. 2945.59. In State v. Burson (1974), 38 Ohio St.2d 157, and State v. Broom (1988), 40 Ohio St.3d 277, the Supreme Court of Ohio has given guidance on the applicability of the exceptions created by Evid.R. 404 and R.C. 2945.59:
 Prosecutors and trial courts should be particularly aware that evidence of other acts of a defendant is admissible only when it `tends to show' one of the matters enumerated in the statute and only when it is relevant to proof of the guilt of the defendant of the offense in question. Such evidence is admissible, not because it shows that the defendant is crime prone, or even that he committed an offense similar to the one in question, but in spite of such facts. Hector [State v.
(1969), 19 Ohio St.2d 167], supra.
 Where evidence of other acts of the defendant is sought to be introduced for the purpose of showing his identity, by his common scheme, plan, or system of committing an offense, the standard for determining admissibility is strict. In Hector, supra, at page 177, it is stated:
 `The legal determination, by comparison of the plan, scheme, or method employed in a prior crime with the plan, system or method employed in the crime in question, of whether the former is relevant to the issue of identity of the perpetrator of the latter, must be made without consideration of the fact that eyewitnesses have identified the same person as the perpetrator of both crimes.
 `There must be some similarity of methodology employed which itself would constitute probative evidence of the probability that the same person (whoever he might be) committed both crimes. * * *.'
 Burson at 158-159.
 Because R.C. 2945.59 and Evid.R. 404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict. The rule and the statute contemplate acts which may or may not be similar to the crime at issue. If the other act does in fact `tend to show' by substantial proof any of those things enumerated, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, then evidence of the other act may be admissible. (Citations omitted.)
* * *
 `Identity of the perpetrator of a crime is the second factual situation in which "scheme, plan or system" evidence is admissible. One recognized method of establishing that the accused committed the offense set forth in the indictment is to show that he has committed similar crimes within a period of time reasonably near to the offense on trial, and that a similar scheme, plan or system was utilized to commit both the offense at issue and the other crimes.' (Emphasis added.) Id.
[State v. Curry (1975), 43 Ohio St.2d 66] at 73, 72 O.O.2d at 41, 330 N.E.2d at 725-726.
 Broom at paragraph one of the syllabus and 282, respectively.
Appellant's trial strategy was that he was not involved. On May 20, 1997, appellant filed a notice of alibi as to the December 1, 1996 incident.[1] As for the January 28, 1997 incident, appellant denied assaulting Ms. Spencer but admitted to begin with her on the night in question. Vol. II T. at 39-42.
Appellant's defense strategy falls within the second exception enumerated in Curry as cited in Broom as appellant denied he was the perpetrator of the criminal acts. Therefore, the showing of appellant committing similar crimes is proper. However, what is missing sub judice is a showing the similar crimes were "within a period of time reasonably near to the offense on trial." The 1991 incident involving Ms. Adams cannot be considered reasonably near in time to the incidents of 1996 and early 1997.
Upon review, we find the trial court erred in admitting Ms. Adams's testimony however, we find this error to be harmless. Harmless error is defined in Crim.R. 52(A) as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."
Ms. DeVault positively identified appellant as her assailant on December 1, 1996 by photo identification and in open court. Vol. I T. at 163-164. Ms. Spencer identified appellant as her assailant on January 28, 1997 at the scene and in open court. Id.
at 200-202. Both women also identified appellant's vehicle. Id.
at 160, 202. Because of these two positive identifications of appellant, we find although it was error to admit Ms. Adams's testimony, said admission did not affect appellant's substantial rights.
Assignment of Error I is denied.
 II
Appellant claims the trial court erred in denying his Crim.R. 29 motion for acquittal on the felonious assault charge. We disagree.
Crim.R. 29 states as follows:
 (A) Motion for Judgment of Acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.
The standard to be employed by a trial court in determining a Crim.R. 29 motion is set out in State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus:
 Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.
Appellant was charged in Count 5 of the indictment as "knowingly, cause or attempt to cause physical harm to Christina Spencer, by means of a deadly weapon as defined in section 2923.11
of the Revised Code, to-wit: a Knife * * *."
Ms. Spencer testified as she was sitting in appellant's vehicle, appellant "come out with a knife and he said bitch, I was really getting this, and I fell out of the car." Vol. I T. at 196. Appellant then stated "[w]hore, you better be glad you got out of my car, bitch." Id. Ms. Spencer testified appellant took a "swing" with the knife towards her. Id. at 222.
Upon review, we find the evidence to substantiate that reasonable minds could reach different conclusions as to whether a felonious assault had been proven beyond a reasonable doubt.
Assignment of Error II is denied.
 III
Appellant claims his convictions for kidnapping and rape were against the manifest weight of the evidence. We disagree.
On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991),61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175. See also, State v. Thompkins (1997), 78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."Martin at 175.
R.C. 2905.01 governs kidnapping and states as follows:
 (A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
* * *
 (4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will;
R.C. 2907.02 defines rape as "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
Appellant was convicted of kidnapping and raping Ms. DeVault on December 1, 1996. Ms. DeVault positively identified appellant as her assailant by photo identification and in open court (Vol. I T. at 163-164), and described the incident as follows:
 A. Um, the Defendant pulled into the alley right there and approached me and would not let me move away from his car at all, and he flung open his door and told me that if I didn't get in his car he was going to kill me.
* * *
 A. He was real — his voice was real like real mean like if I didn't do it he was really going to do something, and I was scared so I got into his car.
* * *
 A. He drove down, down Shorb and we ended up over here off of High and we ended up over there off of Camden where —
* * *
 A. He told me — he asked me how much for oral sex, and I told him the price, and he said no problem. He said let me get the money, and he reached into his pocket, and I thought he was getting his money, but it took him a little while longer, and then that's when he pulled the weapon out and told me that if I didn't do what he said that he was going to kill me.
* * *
 A. He was real demanding. I tried to get out of the car, and he told me that if I got out of the car — I couldn't get out anyway — that I — when — if I got out he was going to kill me. He more or less would — he more or less started calling me names.
Q. What kind of names did he call you?
 A. Foul names. He called me, he called me a bitch, a whore, a slut. He called me everything except what my name was.
 Q. Was he talking to you in the tone of voice that you and I are using right now?
A. No, it was deman — it was real forceful.
Q. What happened then?
 A. Then he pulled the back of my hair. He had his pants undone. He pulled the back of my hair and made me perform oral sex on him, and he made me perform it until he ejaculated.
Q. Where was his hands during this?
 A. One was on, one was on the, in the back of my head and the other one had the knife in his hand.
Q. Do you know which hand was which?
 A. No. All, all I know is he — I'm, I'm pretty sure that it was his right hand that he had at my head pulling my hair.
Q. Pulling your hair?
A. And pushing my head down further and further.
 Q. When you say pushing it down further and further, what do you mean?
 A. He kept trying to make me — I told him — I just kept telling him please don't hurt me cause I was pregnant, and he was like I'm not going to hurt you if you continue doing what you're doing. And I, I gagged at one time, and I, I thought I was, I thought I was done; I thought he was going to do something.
Q. You gagged why?
A. Because he forced my head all the way down on him.
Q. On his penis?
A. Yes.
Id. at 149, 151, 152, 154-155 and 156-157, respectively.
Appellant's defense was that he was at home in bed with his wife (Vol. II T. at 36-38), and his wife corroborated this testimony. Id. at 14-15.
The jury was presented with two versions of the events on December 1, 1996 that if believed would prove either appellant's alibi or appellant's guilt. The weight to be given the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990), 49 Ohio St.3d 182.
Upon review, we find sufficient evidence to support appellant's convictions on kidnapping and rape beyond a reasonable doubt and no miscarriage of justice.
Assignment of Error III is denied.
 IV
Appellant claims the trial court erred in permitting hearsay testimony during the hearing held to determine appellant's "sexual predator" status. We disagree.
R.C. 2950.09(B)(1) governs sexual predator determination hearings and states as follows:
 At the hearing, the offender and the prosecutor shall have an opportunity to testify, present evidence, call and examine witnesses and expert witnesses, and cross-examine witnesses and expert witnesses regarding the determination as to whether the offender is a sexual predator. The offender shall have the right to be represented by counsel and, if indigent, the right to have counsel appointed to represent the offender.
Based upon this language, we find the rules of evidence apply to sexual predator determination hearings.
At the hearing sub judice, appellee introduced the testimony of a former prosecutor, Attorney Richard Nicodemo, regarding two prior prosecutions of appellant on sexual criminal charges. The complained of testimony involved Attorney Nicodemo's testimony the two victims were prostitutes and the cases had similarities. June 4, 1997 T. at 9. The two victims were Christina Warrant (now deceased) and Nora Forrester. Id. at 10-11. Appellant argues Attorney Nicodemo admitted to not recalling if the victims had told him "personally that they were prostitutes or that is something I learned during the course of the trial preparation."Id. at 16.
Although it is an issue of credibility by a trial court to determine the extent of a witness's personal knowledge, we find any error on this issue in the case sub judice to be harmless error. We so find because defense counsel had admitted in opening statement during the trial before the same judge that Ms. Forrester was a prostitute. Vol. I T. at 115-116. Any hearsay admitted as to Ms. Forrester was harmless because of defense counsel's statements on the record. Any hearsay admitted as to Ms. Warrant was harmless given the proof of Ms. Forrester's prostitution.
Assignment of Error IV is denied.
 V
Appellant claims the trial court erred in sentencing him to the maximum on each count and in ordering all the sentences to run consecutively. Appellant claims the facts do not support the sentences under R.C. 2929.14(C) and (E)(3). We disagree.
Sentencing rests in the trial court's sound discretion.State v. O'Dell (1989), 45 Ohio St.3d 140. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217. Pursuant to R.C. 2953.08(G), our standard of review on this issue is clear and convincing evidence.
R.C. 2929.14 governs basic prison terms. Subsections (C) and (E)(3) state as follows:
 (C) Expert as provided in division (G) of this section or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section.
 (E)(3) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed a part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
Appellant argues the facts do not establish the criminal acts constituted the "worst form of the crime," and the sentences are disproportionate to the seriousness of the crime. Appellant argues the criminal acts were not the worst form because Ms. DeVault and Ms. Spencer were prostitutes and were not physically harmed or killed. At the conclusion of the sentencing hearing, the trial court found the following factors related to the decision in sentencing appellant:
 The Court finds that relative to the sexual predator status that it has examined the history of offenses as contained within the discovery process which is available to the Court in this particular file and also the fact that there are multiple victims in this case and in the prior case in which there were pleas to the sexual battery count.
 There were, of course, threats in this particular case and under the facts of this case the Court find that the form of the rape that was committed was the worst form of the particular crime.
 With the prior history, the recidivism is very likely these offenses would occur again. The safety of the public also includes safety of those individuals who engage in prostitution because they are human beings and whether or not their conduct is appropriate is beside the point.
 The Court finds that all of these factors, which the Court has considered in the sentencing factors by statute, the recidivism and the seriousness factors which have been committed in this particular case, of course, the injuries that were imposed warrant the finding of incarceration in this particular case as to each of the counts involved and as stated before not withstanding the conduct of the individuals involved. They are members of the public which the laws are to protect regardless of that and under the history of this particular individual the Court believes that it's necessary to protect the public by imposing appropriate consecutive sentences in this matter and also to punish this individual for conduct and imposing such sentences would not be disproportionate to the seriousness which has been demonstrated in this particular case.
June 4, 1997 T. at 40-41.
Upon review, we find no clear and convincing evidence the trial court abused its discretion in sentencing appellant. The trial court had before it in evidence (through the hearing on Ms. Adams's testimony, the trial and the sentencing hearing) a pattern of kidnapping and attempted sexual assault by appellant since 1991. This pattern of preying on prostitutes, seizing them, raping them and threatening them with knives is similar to a serial rapist. The fact the women were "only prostitutes" and were not killed should not in anyway lessen the seriousness of the offenses nor render the sentences disproportionate.
Assignment of Error V is denied.
 VI
Appellant claims the trial court erred in not merging the charges. We disagree.
R.C. 2941.25 governs multiple counts and provides as follows:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with the separate animus as to each, the indictment of information may contain counts for all such offenses, and the defendant may be convicted of all of them.
Appellant argues the charges stemming from the December 1, 1996 incident (rape, kidnapping and carrying a concealed weapon) should have been merged because kidnaping and rape are allied offenses of similar import. In State v. Logan (1979), 60 Ohio St.2d 126, syllabus, the Supreme Court of Ohio held as follows:
 In establishing whether kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25(B), this court adopts the following guidelines:
 (a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;
 (b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.
Ms. DeVault testified appellant forced her to get into his vehicle by threatening to kill her. Vol. I T. at 149. After driving around awhile, appellant produced a knife and raped her.Id. at 155-157.
As Justice Holmes stated in Logan at 135, the further question is whether "the victim, by such limited asportation or restraint, was subjected to a substantial increase in the risk of harm separate from that involved in the underlying crime." In the case sub judice, the knife was not produced until right before the rape. Vol. I T. at 155. Based upon the facts, we find a separate animus for the December 1, 1996 charges.
Appellant also argues the charges stemming from the January 28, 1997 incident (felonious assault and carrying a concealed weapon) should have been merged. Appellant claims because there was no injury to Ms. Spencer, the knife (concealed weapon) was a legal necessity for the conviction of felonious assault.
Ms. Spencer testified the knife was concealed before he swung it at her. Id. at 195-196, 217. Officer Michael Lombardi of the Canton Police Department testified upon stopping appellant on January 28, 1997, he found a knife on the passenger seat of appellant's vehicle. Id. at 258.
R.C. 2923.12 governs the crime of carrying a concealed weapon and provides "[n]o person shall knowingly carry or have, concealed on his or her person or concealed ready at hand, any deadly weapon or dangerous ordnance."
We find not only was there two incidents of a concealed weapon (readily at hand) on January 28, 1997, but the felonious assault against Ms. Spencer was an act separate and apart from the possession of the knife.
Assignment of Error VI is denied.
The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.
By Farmer, P.J., Reader, J. and Wise, J. concur.
[1] The notice of alibi alleged on said date appellant was at 912 Prospect S.W., Canton, Ohio. Appellant's wife, Catherine Laird, testified she was with appellant at the time of the December 1, 1996 incident. Vol. II T. at 14-15. Appellant also testified at trial as to his whereabouts on said date. Id. at 36-38.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed.