OPINION
Gregory Blanton appeals from his conviction and sentence in the Montgomery County Common Pleas Court for possession of crack cocaine in violation of R.C. § 2925.11(A).
Blanton advances six assignments of error. First, he contends the trial court improperly appeared to enhance his sentence based on his decision to proceed to trial rather than to plead guilty. Second, he alleges that he received ineffective assistance of counsel. Third, he argues that the trial court erred in admitting certain evidence without a limiting instruction. Fourth, he asserts a violation of his Fifth Amendment rights as a result of police questioning that allegedly occurred absent a waiver of his Miranda rights. Fifth, he claims that the trial court erred by giving an erroneous jury instruction. Sixth, he contends that the cumulative effect of the foregoing errors deprived him of a fair trial.
For the reasons set forth below, we conclude that each of Blanton's assignments of error lacks merit. Accordingly, the judgment of the Montgomery County Common Pleas Court will be AFFIRMED.
 I. Factual and Procedural Background
The present appeal stems from Blanton's arrest in the early morning hours of February 17, 2001. At approximately 1:30 a.m., Dayton police officers observed Blanton walking on Dayton Metropolitan Housing Authority ("DMHA") property. At least one of the officers, Timothy Reboulet, was familiar with Blanton. Reboulet knew that Blanton was named on a DMHA trespass list, which identifies non-DMHA residents who have violated the law on DMHA property. Reboulet also knew that Blanton had been arrested "[a] whole bunch of times" for trespassing on DMHA property. After seeing Blanton, Reboulet stopped him and reminded him that he was not permitted on DMHA property. In response, Blanton stated, "Yeah, I know. I'm just cutting through." At that point, Reboulet initiated an arrest for criminal trespassing. While handcuffing Blanton, Reboulet was assisted by other officers who noticed that the appellant's hand was severely swollen. Upon examining the hand, the officers saw a piece of paper between Blanton's finger and thumb. Reboulet handed the paper to officer Thomas H. Harshman. The officers then examined the contents, which appeared to be several small pieces of crack cocaine. As the officers held the substance, Blanton remarked, "[O]h yeah, that's yank." At trial, Reboulet explained that "yank" is a slang term for cocaine. A subsequent field test confirmed that the substance was crack cocaine.
After arresting Blanton, the officers placed him in a police cruiser. Officer Steven Abney then read Blanton his Miranda rights and confirmed that he understood those rights. The officers subsequently transported him to Grandview Hospital for treatment of his hand, which had been injured several days earlier. At the hospital, Blanton told one or more officers that he had discarded a crack pipe upon seeing Reboulet. He added, however, that he had "held onto the crack." Blanton also stated that he had been "getting ready to smoke the hell out of that piece of crack." After Blanton received treatment for his hand, the officers transported him to the county jail. A Miami Valley Regional Crime Lab forensic chemist later confirmed that the substance found in his hand was .22 grams of crack cocaine.
A grand jury later indicted Blanton for possession of crack cocaine in an amount of one gram or less in violation of R.C. § 2925.11(A). The matter proceeded to trial before a jury, which found Blanton guilty. The trial court imposed a twelve-month prison sentence. Blanton then filed this timely appeal, advancing the assignments of error set forth above.
 II. Analysis 1.
In his first assignment of error, Blanton contends the trial court "impermissibly gave the appearance that it considered appellant's request for a jury trial for the purpose of enhancing appellant's sentence." In essence, Blanton argues that the trial court appears to have punished him for exercising his right to proceed to trial rather than pleading guilty.
In support of his argument, Blanton relies on certain remarks the trial judge made at sentencing. In relevant part, the trial court stated:
 "Well, Mr. Blanton, in looking over your record, which is considerable, I do not find you to be a good candidate for probation. . . . You have probably more than thirty misdemeanors and ten felonies to your record. That, in and of itself, means you're probably not amenable to probation.
 In addition, you're not amenable to probation because this was a case where you confessed twice to the police. You knew your guilt and yet you want to drag us all through this and make sure that we all got fifty citizens in here that had to try your case and make sure that it would go all right.
 Not that you don't have the right to all that, you do. But it's my understanding you've made statements that you wanted to make sure everybody got to go through the system. You wanted to make sure that everybody got to — we got — you got your dime out of all of us. And . . . that was your revenge on all of us. . . .
 You aren't remorseful about this. . . . When you're not remorseful, you get no probation. . . .
 First of all, I have looked over your record. It is extensive. I find that you have previously served a prison term. I also find that you committed this offense while you were under a probation sanction from the Dayton Municipal Court.
 You are — also I find that in this crime, your — your record indicates that you will or are likely to recid — have recidivism in this case. And that when I weigh the seriousness factors, the recidivism factors, I think a prison term is consistent with the principles in 2929.11.
 I also find that you're not amenable or available for Community-Controlled Sanctions. Further, I find that you pose the greatest likelihood of committing future crimes based on your incredible record.
 All that put together, sir, I'm going to sentence you to a maximum term of twelve months at the C.R.C. with credit here for time served."
On appeal, Blanton relies on the italicized portion of the trial court's remarks to argue that the judge punished him for electing to proceed to trial. It is beyond dispute that "a defendant is guaranteed the right to a trial and should never be punished for exercising that right."State v. O'Dell (1989), 45 Ohio St.3d 140, 147. Accordingly, when imposing a sentence, a trial court may not be influenced by the fact that a defendant exercised his right to put the government to its proof rather than pleading guilty. State v. Scalf (Mar. 5, 1998), Cuyahoga App. No. 71910, unreported. Moreover, as Blanton properly notes, courts have warned against making statements that suggest an intent to punish a defendant for proceeding to trial. See, e.g., State v. Williams (Oct. 19, 1995), Cuyahoga App. No. 67970, unreported; State v. Laing, (Dec. 2, 1999), Cuyahoga App. No. 73927, unreported.
In Scalf, upon which Blanton relies, the Eighth District Court of Appeals reviewed primarily federal case law and concluded that a defendant's sentence must be vacated if the record creates an unrebutted inference that his sentence was enhanced because he elected to put the government to its proof. If an inference of sentencing impropriety exists, the Scalf court reasoned that an appellate court must "determine whether the record contains an unequivocal statement as to whether the decision to go to trial was or was not considered in fashioning the sentence. . . . Absent such an unequivocal statement, the sentence will be reversed and the matter remanded for resentencing." Scalf, supra, at *5.
In the present case, we believe that the trial court's challenged remarks, standing alone, do support an inference that the judge may have considered Blanton's refusal to plead guilty when denying probation and imposing a term of incarceration. When read as a whole, however, the foregoing remarks by the trial court persuade us that he would not have granted probation, even if Blanton had pleaded guilty. Stated differently, although we disapprove of the challenged remarks, we harbor no doubt that Blanton's decision to put the government to its proof was not a factor in the trial court's sentencing decision. In reaching this conclusion, we note that after making the remarks challenged by Blanton, the trial court expressly identified the factors that did weigh in its sentencing decision:
 First of all, I have looked over your record. It is extensive. I find that you have previously served a prison term. I also find that you committed this offense while you were under a probation sanction from the Dayton Municipal Court.
 You are — also I find that in this crime, your — your record indicates that you will or are likely to recid — have recidivism in this case. And that when I weigh the seriousness factors, the recidivism factors, I think a prison term is consistent with the principles in 2929.11.
 I also find that you're not amenable or available for Community-Controlled Sanctions. Further, I find that you pose the greatest likelihood of committing future crimes based on your incredible record.
 All that put together, sir, I'm going to sentence you to a maximum term of twelve months at the C.R.C. with credit here for time served."
Notably absent from the foregoing statements is any mention of Blanton's decision to proceed to trial. In short, we construe these statements by the trial court as an unequivocal explanation of its sentencing decision, sufficient to dispel any inference of impropriety. Accordingly, Blanton's first assignment of error is overruled.
 2.
In his second assignment of error, Blanton contends that he was "denied effective assistance of counsel in violation of his rights under theSixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I, of the Ohio Constitution." In support of this assignment of error, Blanton identifies eight alleged instances of ineffective assistance. Upon review, we conclude that the deficiencies alleged by Blanton do not constitute ineffective assistance of counsel.
The Ohio Supreme Court has articulated a two-part test for determining whether a defense attorney's poor performance constitutes ineffective assistance of counsel. The court in State v. Bradley (1989),42 Ohio St.3d 136, held that "[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proven to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." Id. at paragraph two of the syllabus.
In the present case, Blanton first alleges ineffective assistance based on his attorney "introducing, eliciting, and reinforcing damaging and prejudicial evidence." In particular, defense counsel elicited testimony concerning the fact that Blanton had been arrested "[a] whole bunch of times." Defense counsel also elicited testimony concerning his client's lack of a permanent address. Finally, on cross-examination, defense counsel elicited testimony reinforcing the fact that Blanton had "kept the cocaine" in his hand after throwing away a crack pipe.
Assuming, arguendo, that defense counsel's performance fell below an objective standard of reasonable representation when he elicited the foregoing information, we find no resulting prejudice to Blanton. As the United States Supreme Court explained in Strickland v. Washington
(1984), 466 U.S. 668, 686, "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." In light of the overwhelming evidence of Blanton's guilt, we are convinced that any damaging testimony elicited by his attorney had no impact on the jury's verdict. As noted,supra, the State's uncontroverted evidence establishes that officers discovered crack cocaine in Blanton's hand. Furthermore, the State's uncontroverted evidence establishes (1) that Blanton spontaneously (i.e., not in response to any police interrogation) identified the substance in his hand as "yank," and (2) that after being arrested and advised of his Miranda rights, he admitted possessing crack cocaine. In light of this evidence, we find no possible prejudice resulting from defense counsel's examination of witnesses.
In a second argument, Blanton contends that his attorney provided ineffective assistance by failing to file a motion to suppress. In support, the appellant notes that the State did not introduce the DMHA "trespass list" at trial. Blanton also argues that the State never established that the trespass list was properly updated, or that his name actually appeared on it. Blanton next reasons that if his name did not appear on an updated list, then the stop, arrest and subsequent seizure were illegal, and the contraband should have been suppressed. Finally, Blanton asserts that he was questioned "under circumstances in which a suspicion of coercion arises." In support, he contends (1) that he had been on a "crack binge" for three days prior to his arrest, (2) that he had suffered a hand injury several days earlier, and (3) that three officers were present at the hospital when he admitted possessing crack cocaine.
Upon review, we find the foregoing arguments to be unpersuasive. "TheSixth Amendment right to effective assistance of counsel does not require defense counsel to file a motion to suppress evidence where none of the defendant's constitutional rights were violated." State v. Lester
(1998), 126 Ohio App.3d 1, 6. In the present case, the record contains nothing, other than Blanton's pure speculation, to suggest that the trial court would have sustained a motion to suppress. Officer Reboulet testified, based on his experience patrolling the DMHA property, that he knew Blanton was on the "trespass list." Although the State never introduced the list, defense counsel did not object. Given that the list itself is not a part of the record on appeal, nothing before this court suggests that the "trespass list" was not current, or that Blanton's name did not appear on it. Significantly, however, when confronted by Reboulet, Blanton himself admitted that he was "not supposed to be out [t]here." In light of Reboulet's testimony and this admission by the appellant, the record is devoid of evidence to support a finding that Blanton's arrest, and the resulting discovery of crack cocaine, were unlawful. As a result, we perceive no basis for suppression of the drug evidence on such grounds.
In addition, nothing in the record supports the suppression of Blanton's statements to police. Blanton was not "seized" or otherwise in custody when he admitted trespassing on DMHA property. Thereafter, as he was being arrested, the appellant voluntarily identified the substance in his hand as "yank." This statement was not made in response to police questioning. Therefore, it cannot be subject to suppression. The record also reflects that Blanton was informed of his Miranda rights prior to his confession at the hospital, and he indicated that he understood those rights. Although no officer testified about Blanton expressly waiving his rights, he did respond to questioning after being informed of them. At a minimum, then, Blanton implicitly waived his Miranda rights by answering an officer's questions at the hospital, and the record is devoid of evidence to the contrary. Cf. State v. Davie (1997), 80 Ohio St.3d 311
(recognizing that waiver sometimes may be inferred from an individual's actions and words after acknowledging his Miranda rights); State v.Guerry (June 7, 2001), Cuyahoga App. No. 78101, unreported ("[I]t is clear that when the appellant chose to answer the question regarding the gun, he waived his rights."). Under these circumstances, we find no basis upon which to conclude that the trial court may have sustained a motion to suppress. Finally, Blanton's arguments regarding "coercion" are meritless. We find absolutely nothing in the record to suggest that his will was overborne, or that his capacity for self-determination was critically impaired. Although Blanton allegedly had been on a crack binge and had injured his hand, nothing in the record suggests that these facts rendered him incapable of waiving his Miranda rights at the hospital by voluntarily answering questions. Furthermore, even if more than one officer was in the hospital room when Blanton confessed, he fails to explain how such a fact constituted "coercion" sufficient to warrant suppression. In any event, even if Blanton's hospital room confession were subject to suppression (which it is not), we would find no prejudice resulting from defense counsel's failure to file a motion to that effect, given (1) the officers' discovery of crack cocaine in the appellant's hand and (2) his voluntary admission, while on DMHA property, that the substance was "yank." In short, this uncontroverted evidence rendered Blanton's hospital room confession wholly unnecessary.
In a third argument, Blanton contends that his attorney provided ineffective assistance by failing to object at trial to evidence related to the trespass list, and by failing to cross-examine officer Reboulet about the list. Upon review, we find this argument to be unpersuasive. Blanton has not shown any probability that he would have been acquitted if, at trial, defense counsel had challenged testimony concerning the list or his name being on it. The reason is simple. As the State properly notes, issues such as whether the trespass list was reliable and whether the appellant's name appeared on the current version of the list are relevant only to the legality of his stop/arrest and, by extension, the admissibility of the crack cocaine. In other words, if Blanton's name were not on a current trespass list, then officer Reboulet may have lacked reasonable articulable suspicion to stop Blanton or probable cause to initiate an arrest (an issue that, for the reasons to follow, we need not decide). If that were the case, then the crack cocaine may have been subject to suppression.[1]
At trial, however, the legality of Blanton's stop and subsequent arrest (i.e., the existence of reasonable articulable suspicion or probable cause to believe that he was guilty of criminal trespassing), and the corresponding admissibility (or inadmissibility) of the crack cocaine, were no longer at issue, given that such issues must be litigated through a pre-trial suppression motion. See, e.g., State v. Greer (1988),39 Ohio St.3d 236, 240 (reasoning that the issue of probable cause to arrest the defendant was waived because it was not included in a pre-trial motion to suppress as a basis for suppressing evidence); Statev. F.O.E. Aerie 2295 (1988), 38 Ohio St.3d 53, 55 ("Inasmuch as the evidence considered by the trial court was not the subject of a timely motion to suppress, any error regarding its admissibility was waived."). The jury's task at trial was simply to decide whether the appellant was guilty of crack cocaine possession, as alleged in the indictment. Given that the trespass list was not relevant to this issue, defense counsel did not provide ineffective assistance by failing to ask questions about it.
In a fourth argument, Blanton contends that defense counsel provided ineffective assistance by failing to request a limiting instruction concerning (1) testimony about his prior trespass violations, and (2) testimony about a fight that caused his hand injury. Although cautionary instructions serve an important purpose, defense counsel's failure to request such instructions in the present case, even if improper, did not prejudice Blanton. It is patently unreasonable to suggest that the appellant might have been acquitted, despite his two confessions and the officers' discovery of crack cocaine in his hand, if only the jury had been cautioned about his prior trespasses and an unrelated fight. In short, our confidence in the jury's verdict is not diminished by the absence of cautionary instructions.
In a fifth argument, Blanton asserts that defense counsel provided ineffective assistance by failing to object to re-direct examination that exceeded the scope of cross examination. In particular, Blanton contends the State exceeded the scope of officer Reboulet's cross examination when, on re-direct examination, the officer (1) identified the appellant in court as the individual who possessed the crack cocaine, and (2) identified an exhibit as being the crack cocaine at issue.
Upon review, we conclude that the State's re-direct examination did not exceed the scope of cross examination. In his cross examination of Reboulet, defense counsel inquired about the officer's observation of Blanton on DMHA property on the night in question. Defense counsel also asked, "[Do] you see, uh . . . Mr. Blanton today?" In light of this questioning, we cannot agree that the State exceeded the scope of cross examination by asking, on re-direct examination, whether Reboulet could make an in-court identification of the individual he saw on DMHA property on February 17, 2001. Likewise, on cross examination defense counsel questioned Reboulet about the cocaine found in Blanton's possession. In light of that inquiry, the State did not exceed the scope of cross examination by having the officer identify an exhibit as the drug evidence obtained from Blanton. Given that the State did not exceed the scope of cross examination, defense counsel cannot have rendered ineffective assistance by failing to raise such an objection.
In a sixth argument, Blanton asserts that defense counsel rendered ineffective assistance by failing to conduct a proper chain-of-custody cross examination with respect to the State's drug evidence, and by failing to object to the admission of the drug evidence based on the absence of a proper chain of custody. Upon review, we find these claims to be unpersuasive. This court has "recognized that while the State has the burden of establishing the chain of custody of a piece of evidence, that burden is not absolute since the State needs only to establish that it is reasonably certain that substitution, alteration, or tampering did not occur. Furthermore, breaks in the chain of custody go not to the admissibility of the evidence but to the weight afforded." State v.Jones, (March 31, 2000), Miami App. No. 99 CA 38, unreported.
In the present case, officer Harshman testified that he took the crack cocaine from Blanton and gave it to officer Reboulet to be field tested. The record reflects that Harshman then took the cocaine to a property room and secured it in an envelope with evidence tape bearing his initials. Thereafter, forensic chemist Brook Baker removed the cocaine from the locked storage room and subjected it to laboratory testing. In light of this evidence, we are convinced that the State proved, with reasonable certainty, that no substitution, alteration, or tampering occurred. Based on the record before us, it appears that additional cross examination of officer Harshman neither would have uncovered a break in the chain of custody nor established any unreliability of the drug evidence. Finally, as noted above, chain-of-custody issues ordinarily affect the weight, rather than the admissibility, of evidence. As a result, defense counsel did not provide ineffective assistance by failing to object to the admission of the crack cocaine, even assuming, arguendo, that a chain-of-custody problem existed.
In a seventh argument, Blanton contends that his attorney provided ineffective assistance by abandoning his defense and by failing to fulfill a duty of zealous advocacy. In support, the appellant advances two propositions. First, he complains that his attorney's closing argument inadvertently may have left the jury with the impression that defense counsel believed his client was guilty. Second, Blanton criticizes his attorney for telling the trial court at sentencing that he had "absolutely no defense."
Upon review, we cannot agree that either incident constituted an act of objectively unreasonable representation by Blanton's attorney. In its closing argument, the State reminded the jury that the evidence against the appellant was "direct, uncontradicted, [and] unrefuted." The State also remarked that "[t]here is no evidence to the contrary." In response, defense counsel stressed the critical point that his client had no legal obligation to contradict or to refute anything, stating:
 You make no mistake about this unrefuted. That's the, uh . . . reason I — I haven't jumped up and down all that much and did that. It's not his burden. He can put forth no evidence at all. Unrefuted gives you a — a state of mind like he's got to refute something? No, it's their burden.
 Now, that part I — I would hope that you agree with. The Judge will also instruct you on that; he has no burden. It ought to be unrefuted. He doesn't have to show anything.
In light of the State's strong evidence, we do not believe that defense counsel could have made a finer attempt to turn the prosecutor's statement on its head. The evidence against the appellant truly was direct, uncontradicted, and unrefuted. As a result, defense counsel could do no better than to remind the jury that Blanton had no legal obligation to contradict or to refute anything.
Likewise, we find no objectively unreasonable representation stemming from defense counsel's admission, at sentencing, that the appellant had "absolutely no defense." The trial transcript reveals that Blanton indeed had no defense, and this fact must have been apparent to the trial judge and to anyone else who watched the trial. Having reviewed the entire sentencing transcript, we are persuaded that defense counsel conceded his client's lack of a defense as part of a larger strategy to place Blanton at the mercy of the court. In our view, defense counsel's decision to provide the trial court with a candid and honest appraisal was not objectively unreasonable under the facts of this case. Given the strength of the State's evidence and his client's criminal history, defense counsel quite reasonably could have believed that the trial judge would respond more leniently to complete honesty. In any event, the overwhelming evidence and Blanton's criminal record appear to have left defense counsel with no viable alternative. As a result, we find no ineffective assistance as a result of counsel's statements.
In an eighth and final "ineffective assistance" argument, Blanton claims that his attorney provided ineffective assistance at sentencing by not objecting to the trial judge's remarks about his demand for a jury trial. In a related vein, Blanton contends that defense counsel provided ineffective assistance by failing to clarify whether the trial court actually enhanced his sentence for exercising his right to a jury trial. Our disposition of Blanton's first assignment of error is equally applicable to these assertions. As noted, supra, we particularly disapprove of the trial judge's statement to Blanton that "[y]ou knew your guilt and yet you want to drag us all through this and make sure that we all got fifty citizens in here that had to try your case and make sure that it would go all right." Standing alone, such a statement might suggest that the trial judge sentenced Blanton based, at least in part, on his refusal to plead guilty. As we explained above, however, although we do not condone the challenged remarks, we have no doubt that Blanton's decision to put the government to its proof was not a factor in the trial court's sentencing decision. Indeed, as noted, supra, the trial court expressly identified the factors that did weigh in its sentencing decision, and those factors did not include Blanton's decision to proceed to trial. As a result, we find neither deficient representation nor prejudice to the appellant as a result of defense counsel's performance during the sentencing hearing. Accordingly, Blanton's second assignment of error is overruled.
 3.
In his third assignment of error, Blanton contends that the trial court "erred in admitting prejudicial non-responsive evidence over objection without offering a limiting instruction to the jury." This assignment of error concerns officer Reboulet's testimony that Blanton had injured his hand in a fight several days before his arrest. Defense counsel objected generally, and the trial court overruled the objection. On appeal, Blanton argues that the reference to a fight was irrelevant to the offense charged and prejudicial because it depicted him as being violent. As a result, he reasons that the trial court should have sustained the objection or, at a minimum, given the jury a cautionary instruction.
Upon review, we believe that the reference to a fight had some relevance, insofar as it explained why Blanton's hand was swollen. In turn, the swollen hand itself was somewhat relevant because it prompted the closer inspection which revealed the crack cocaine at issue. Nevertheless, we are inclined to agree that a cautionary instruction would have been appropriate in light of the trial court's decision to overrule defense counsel's objection. We cannot agree, however, that the trial court erred by failing to give such an instruction. We reach this conclusion primarily because defense counsel never requested a limiting instruction. Rather than asking for such an instruction, defense counsel only raised a general objection when officer Reboulet mentioned the appellant's fight. In any event, even assuming, arguendo, that the trial court did err in its handling of Reboulet's testimony about a fight, we are convinced that any such error was harmless in light of the overwhelming evidence of the appellant's guilt. Accordingly, Blanton's third assignment of error is overruled.
 4.
In his fourth assignment of error, Blanton contends that his "Fifth Amendment right to remain silent was violated through the failure of police to elicit a waiver of his rights before questioning him." Blanton's appellate brief reveals that this argument concerns his confession at the hospital. Upon review, we find this assignment of error to be unpersuasive for at least two reasons. First, we note that a defendant must move before trial to suppress statements allegedly obtained in violation of his constitutional rights. See Crim.R. 12(C)(3). A failure to do so constitutes a waiver of any objection to the introduction of that evidence at trial, unless the defendant can show good cause for not filing a timely pre-trial motion. State v. F.O.E. Aerie 2295 (1988),38 Ohio St.3d 53, 55 ("Inasmuch as the evidence considered by the trial court was not the subject of a timely motion to suppress, any error regarding its admissibility was waived."). In the present case, Blanton has not shown good cause for failing to file a pre-trial suppression motion. Consequently, he has waived any error concerning the admissibility of his statements.
In any event, this assignment of error also fails for a second reason. As noted, supra, the record reflects that Blanton was informed of hisMiranda rights prior to his confession at the hospital, and he indicated that he understood those rights. Although no officer testified about Blanton expressly waiving his rights, he responded to questioning after being informed of them. Consequently, as we explained above, one may infer that Blanton waived his Miranda rights by answering an officer's questions at the hospital, and the record is devoid of evidence to the contrary. For the foregoing reasons, Blanton's fourth assignment of error is overruled.
 5.
In his fifth assignment of error, Blanton contends that "the trial court erred in providing jurors with an improper jury instruction." This argument concerns the trial court's definition of the term "possess." The trial court defined that term as follows:
 Possess means having control over — over a thing or substance, but may not be inferred solely for mere access to the thing or substance, or through ownership or occupation of the premises upon which the thing or substance is found.
(Emphasis added).
On appeal, Blanton properly notes that the trial court should have informed the jury that possession "may not be inferred solely from mere access to a thing or substance. . . ." Although the trial judge misspoke by stating "for" rather than "from," we do not believe that the misstatement materially altered the meaning of the instruction. Furthermore, the misstatement concerned inferring possession, which was not at issue in the present case, given that the officers found crack cocaine in Blanton's hand. In any event, defense counsel did not object to the instruction, thereby waiving all but plain error. The Ohio Supreme Court has recognized that an erroneous jury instruction "`does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise.'"State v. Cooperrider (1983), 4 Ohio St.3d 226, 227, quoting State v.Long (1978), 53 Ohio St.2d 91, 97. This standard certainly has not been met in the present case. Accordingly, Blanton's fifth assignment of error is overruled.
 6.
In his sixth assignment of error, Blanton insists that the combined effect of the various errors alleged above warrants the reversal of his conviction. In support, he cites State v. DeMarco (1987),31 Ohio St.3d 191, and State v. Hamilton (Feb. 12, 1988), Montgomery App. No. 10007, unreported, for the proposition that "when the cumulative effect of errors deprives the defendant of a fair trial, the conviction must be reversed and a new trial ordered." In response, the State argues that where no individual instances of prejudicial error have been shown, so-called "cumulative error" cannot exist. See State v. Blankenship
(1995), 102 Ohio App.3d 534, 557; but see State v. Madrigal (2000),87 Ohio St.3d 378, 397 ("Errors that are separately harmless may, when considered together, violate a person's right to a fair trial."); Statev. Demoss (March 2, 2002), Champaign App. No. 2001-CA-5, unreported (same).
Upon review, we find this assignment of error to be unpersuasive. Although we do not dispute the legal principle upon which the appellant relies, he has failed to establish the existence of "cumulative error" sufficient to warrant the reversal of his conviction. As our analysis of Blanton's other arguments demonstrates, he has shown, at most, isolated instances of harmless error. As noted above, instances of harmless error, when viewed collectively, can deprive a defendant of a fair trial. In the present case, however, even assuming that minor errors infected the proceedings below, any "such errors were substantially, if not completely, diluted by the overwhelming nature of the State's evidence." State v. Hamilton (Feb. 12, 1988), Montgomery App. No. 10007, unreported. In short, we once again have considered all of Blanton's assignments of error, both singularly and cumulatively, and we harbor no doubt that he received a fair trial, without any infringement on his rights. Accordingly, his sixth assignment of error is overruled.
 III. Conclusion
Based on the reasoning and citation of authority set forth above, the judgment of the Montgomery County Common Pleas Court is AFFIRMED.
BROGAN, J., and FAIN, J., concur.
[1] As noted above, however, in connection with Blanton's argument that his attorney provided ineffective assistance by failing to file a motion to suppress, the appellate record contains absolutely no evidence to suggest that Blanton's name did not appear on a current trespass list. For that reason, we have concluded, supra, that defense counsel did not render ineffective assistance by neglecting to file a pre-trial suppression motion.