[Cite as *State v. Bitting*, 2011-Ohio-5892.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS | |
| | )ss: | NINTH JUDICIAL DISTRICT | |
| COUNTY OF SUMMIT | ) | | |

STATE OF OHIO

    Appellee

    v.

DANIEL L. BITTING

    Appellant

C.A. No.      25774

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 10 09 2592

DECISION AND JOURNAL ENTRY

Dated: November 16, 2011

WHITMORE, Judge.

{¶1}    Defendant-Appellant, Daniel Bitting, appeals from the judgment of the Summit County Court of Common Pleas.  This Court affirms.

I

{¶2}    At approximately 3:00 a.m. on August 25, 2010, Cho'ice Wright was awakened when her boyfriend, Darnell Bitting, came into her bedroom.  Darnell stayed for a little over an hour, received a phone call, and left.  Wright then fell back asleep, but woke again at some point after 5:30 a.m. because she heard one of the floorboards outside her room creak.  Wright got out of bed and heard her backdoor slam.  She walked over to a window that faced her backyard and saw that someone had activated her motion light.  Wright saw a man in her backyard and yelled down to him.  When the man turned to look in Wright's direction, she recognized him as Darnell's brother, Daniel Bitting.  Bitting then turned and ran.

{¶3} Wright found her purse in her kitchen and realized the purse was empty. The purse had been next to Wright's bed along with five other purses when she went to sleep. Further, Wright had placed $1,200 in cash in that particular purse. Wright called Darnell, believing that he had told his brother that she had a large amount of cash in the house and where to find it. According to Wright, Darnell admitted that Bitting had taken the money.

{¶4} On September 29, 2010, a grand jury indicted Bitting on one count of burglary, in violation of R.C. 2911.12(A)(1). A bench trial began on December 6, 2010, at the conclusion of which the court found Bitting guilty. On December 27, 2010, the court sentenced Bitting to three years in prison.

{¶5} Bitting now appeals from his conviction and raises two assignments of error for our review.

II

Assignment of Error Number One

"APPELLANT BITTING'S CONVICTION MUST BE REVERSED AS IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶6} In his first assignment of error, Bitting argues that his conviction is against the manifest weight of the evidence. We disagree.

{¶7} In determining whether a conviction is against the manifest weight of the evidence an appellate court:

> "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387.

Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 175; see, also, *Otten*, 33 Ohio App.3d at 340.

{¶8} "No person, by force, stealth, or deception, shall *** [t]respass in an occupied structure *** when another person other than an accomplice of the offender is present, with purpose to commit in the structure *** any criminal offense[.]" R.C. 2911.12(A)(1). Whoever commits the foregoing offense is guilty of burglary. R.C. 2911.12(D).

{¶9} Wright testified that she placed $1,200 in a purse that she then put next to her bed along with several other purses. Wright testified that she had the money at home because she had recently cashed a check she received for her student loan and did not have a bank account. Wright found her empty purse in her kitchen after she saw Bitting in her backyard and he ran from her. She testified that she knew Bitting because he was her boyfriend's brother. Further, she testified that she was able to see Bitting after she yelled because her motion light illuminated his face when he turned to face her. Wright opined that her boyfriend, Darnell, told his brother that she had a large amount of cash in her bedroom. According to Wright, Darnell admitted to her on the phone that Bitting had stolen her money.

{¶10} Bitting presented several alibi witnesses and testified in his own defense. Bitting, his sister, and Denise Edwards, the mother of Bitting's child, all testified that Bitting was at Edwards' residence from approximately 10:30 p.m. on August 24, 2010 until the following morning. According to Bitting and several defense witnesses, Wright purposely accused Bitting

of burglary because she was angry. Darnell testified that Wright became angry with Bitting after she heard him call her an "ugly b***h" while she was on the phone with Darnell. Darnell claimed that he had ended his relationship with Wright several months before this incident and that she did not react well to their breakup. Darnell also denied having gone to Wright's home several hours before the burglary occurred. Both Darnell and Bitting admitted that they had prior convictions. In particular, Bitting admitted that he had a prior conviction for robbery and was out on bond for attempted burglary at the time Wright accused him of burglarizing her.

{¶11} Bitting argues that his conviction is against the manifest weight of the evidence because multiple people testified that he was with them at the time the burglary occurred. Yet, "the trier of fact is in the best position to determine the credibility of witnesses and evaluate their testimony accordingly." *State v. Johnson*, 9th Dist. No. 25161, 2010-Ohio-3296, at ¶15. The trial court here chose to believe the victim rather than Bitting's alibi or his assertion that the victim fabricated criminal charges against him out of anger over an off-color remark. We do not find its resolution of credibility to be unreasonable. Based on our review of the record, we cannot conclude that Bitting's conviction is against the manifest weight of the evidence simply because the court found the victim more credible. See *State v. Jarvis*, 9th Dist. No. 25481, 2011-Ohio-4491, at ¶14. Bitting's first assignment of error is overruled.

### Assignment of Error Number Two

"APPELLANT BITTING'S SENTENCE MUST BE VACATED, AS THE TRIAL COURT RELIED UPON IMPERMISSIBLE FACTORS WHEN IT IMPOSED BITTING'S SENTENCE, THEREBY ABUSING ITS DISCRETION."

{¶12} In his second assignment of error, Bitting argues that the trial court abused its discretion when it sentenced him to three years in prison. Specifically, he argues that the court allowed improper factors to influence its sentencing decision.

{¶13} Trial courts have "full discretion *** to sentence defendants within the bounds prescribed by statute." *State v. Evans*, 9th Dist. No. 09CA0049-M, 2010-Ohio-3545, at ¶32, citing *State v. Foster*, 109 Ohio St.3d 1, paragraphs one through seven of the syllabus. Appellate courts apply a two-step approach in reviewing the sentence that a trial court has imposed upon a defendant. *Evans* at ¶32, quoting *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, at ¶4. "First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard." *Kalish* at ¶4. An abuse of discretion implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶14} Bitting concedes that his three-year prison sentence is not contrary to law, as it falls within the statutory sentence range for his offense. See R.C. 2929.14(A)(2). He argues, however, that the court abused its discretion in imposing his sentence because it relied upon improper factors in issuing his sentence. Specifically, Bitting argues that the court punished him for his lifestyle choices in sentencing him.

{¶15} In Bitting's sentencing entry, the trial judge explicitly noted that she had considered the principles and purposes of sentencing set forth in R.C. 2929.11 as well as the seriousness and recidivism factors set forth in R.C. 2929.12. The trial judge listened to arguments from both the State and defense counsel, heard from Bitting, and indicated that she had read letters submitted on Bitting's behalf. The court noted that Bitting had prior convictions for similar conduct. The court further noted that Bitting showed an "utter disregard" for the consequences of his actions, as he committed the burglary against Wright while out on bond for

another pending burglary charge to which he later pleaded guilty. Even so, the trial judge did not sentence Bitting to the five-year term that the State requested. Instead, she chose to sentence him to three years.

{¶16} The record reflects that, in sentencing Bitting, the court commented that he had finally suffered consequences as a result of his poor judgment. Bitting had testified at trial that he had a child with Edwards, with whom he claimed to have spent the night at the time of the burglary. He indicated, however, that he only arrived at Edwards' home after leaving a different woman's apartment. He indicated at trial that he did not know the woman's last name and described her as his "little lady friend[.]" He also acknowledged at sentencing that he was involved with Edwards despite the fact that she had brought domestic violence charges against him. During sentencing, the trial judge referenced what she perceived to be a certain penchant Bitting had for "play[ing] people," particularly women, and noted his choice to act the way that he did rather than be a responsible father for his daughter. See generally *State v. O'Dell* (1989), 45 Ohio St.3d 140, 147 (concluding that a sentencing court may "consider evidence heard during the trial as well as the demeanor of the accused"). Bitting's counsel did not enter any objections at the sentencing hearing.

{¶17} Bitting argues that his choice of lifestyle is not a factor that the court could consider in sentencing him. Yet, even assuming that the court erred here and that Bitting did not forfeit any objection to that error by failing to object, the record does not support the conclusion that Bitting suffered any prejudice. The court considered the factors set forth in R.C. 2929.11 and R.C. 2929.12, emphasized that Bitting had history of similar conduct that resulted in prior convictions, and ultimately issued him a sentence of three years in prison out of a possible eight-

year term. Bitting's argument that his sentence must be vacated lacks merit. His second assignment of error is overruled.

### III

{¶18}  Bitting's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

BELFANCE, P. J.
CARR, J.
CONCUR

APPEARANCES:

JACQUENETTE S. CORGAN, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.